## THE STATE *vs.* MICHAEL MORIARTY.

Under the statute (Gen. Statutes, p. 520, sec. 43), which makes it an offense to keep a place in which it is reputed that intoxicating liquors are kept for sale, such reputation is not conclusive evidence of the guilt of the accused, but he may show by proper evidence that he did not in fact keep liquors for sale, and that the reputation is not well founded.

The statute in one section forbids the keeping of intoxicating liquors for sale, and in another the keeping a place in which it is reputed that intoxicating liquors are kept for sale. These two offenses are so far distinct that an acquittal of the former is not a bar to a conviction of the latter, although the times at which the offenses are charged to have been committed are the same.

In a prosecution for the former offense the whole burden of proof is on the state, while in one for the latter the burden of proof, after reputation is shown, is shifted upon the accused. An acquittal in the former case may result from an insufficiency of proof on the part of the state, while upon the same facts a conviction in the latter case may result from an insufficiency of proof on the part of the accused.

Where the accused had kept the same place continuously for a year, and was charged with keeping a place in which it was reputed that intoxicating liquors were kept for sale on a certain day, it was held that evidence was admissible that liquors were actually kept by him exposed for sale at a time three months later, but within his continued occupancy of the place.

Such evidence would be of constantly diminishing weight with the lapse of time, but would be admissible, under instructions of the court as to the considerations affecting its weight.

It being a question of the intent with which the liquors were kept, and intent being generally a matter of continuance, the existence of the intent at the former time might be inferred, more or less strongly, from its existence later.

COMPLAINT for keeping a house in which it was reputed that intoxicating liquors were kept for sale, and in a second count for keeping intoxicating liquors for sale, without a license, on the 10th day of March, 1882; brought before a justice of the peace. The justice found the accused guilty on the first count and not guilty on the second. The accused appealed from the judgment on the first count to the Superior Court in Windham county, where the case was tried to the jury before *Stoddard, J.* Upon the trial the accused asked the court to charge the jury that the acquit

tal upon the second count was conclusive in his favor upon the question of his guilt upon the first count. The court did not so charge; and the jury having returned a verdict of guilty, the accused appealed to this court on the ground of the error in the charge, and of an error in the ruling of the court as to evidence, which is fully stated in the opinion.

*T. E. Graves,* for the appellant.

*J. J. Penrose,* State's Attorney, *contra.*

PARK, C. J. The defendant was on trial before the jury for keeping a place reputed to be a place where intoxicating liquors were kept for sale, without having a license therefor. On the trial he offered in evidence the record of a justice court acquitting him of the charge of keeping intoxicating liquors for the purpose of selling them, without a license; the latter charge covering the same time with that on which he was then on trial before the jury. The evidence was admitted, and the counsel for the defendant requested the court to charge the jury that it was conclusive in the defendant's favor, as showing that the reputation of the place, as one where intoxicating liquors were kept for sale, had no foundation in fact. The court refused so to charge, and the question now before us is, whether this was error.

This court has of course nothing to do with the probabilities of the case. The sole question for us is whether the acquittal in the former case and the conviction in the present can stand together as a matter of law. In other words, does the acquittal in that case exclude the possibility, as a matter of law, of a conviction in this.

The statute upon which the present complaint is founded was fully considered by this court in the cases of *State* v. *Morgan,* 40 Conn., 44, and *State* v. *Thomas,* 47 id., 546. The statute was there interpreted as meaning a reputation founded in fact, and as therefore equivalent to proof of the

fact that liquors were kept for sale, the proof of the repu-
tation being merely *primâ facie* proof that it was well
founded, leaving the defendant the right to prove, if he
should be able, that liquors were not in fact kept by him
for sale. In thus throwing the burden of proof of his in-
nocence upon the defendant, after proof of the reputation,
the statute was introducing no new or unreasonable rule
into the criminal law. There are many cases where *primâ
facie* proof of guilt on the part of the state is held to be
sufficient for a conviction, if the defendant does not explain
away the *primâ facie* case against him. Thus where stolen
property is found immediately after the theft in the posses-
sion of a person, it is sufficient proof that he is the thief,
unless he shall explain his possession and show it to be in-
nocent. Of course the charge may be in fact groundless,
but if it is so it is almost always easy for the defendant to
show it. He can in almost every case prove without diffi-
culty where he got the property, and that it came to him
honestly. There can hardly be conceived a case where this
shifting of the proof upon the defendant is less likely than
in a case like the present, to do him an injustice. It is, in
the first place, hardly possible for a place to get an estab-
lished reputation as one where liquors are kept for sale,
when in fact they are not so kept. The indications are
always too numerous and positive to allow of any mistake.
In the next place, if no liquors are in fact kept in the place
for sale, the defendant can establish the fact with no diffi-
culty. The members of his family, if the place be a dwell-
ing house or annexed to one, and his clerk, if it be a store,
and persons occasionally at the place, whatever it may be,
can all testify to the actual character of the place. The
possibility of injustice is so small as not to be worthy of
consideration. It is to be noticed that an acquittal upon
the charge of keeping liquors for sale, does not prove that
the defendant did not keep them for sale. Many a guilty
man has been acquitted. He is merely protected from
further prosecution upon the same charge. This alone
would show that the acquittal could not bar the prosecu-

tion for keeping a house reputed to be a place where liquors were kept for sale, for it would not be a charge of the same crime.

A charge therefore of keeping a place reputed to be a place where liquors are kept for sale, and a charge of keeping liquors for sale in fact, stand, both in logic and in law, upon entirely different evidence. In the first case the charge is sustained by proof of reputation, unless the defendant proves the actual fact to be otherwise. In the latter, the charge can be sustained only by proof of the actual fact. It might thus happen that a charge of reputation would be fully sustained and, the defendant offering no evidence, he would be convicted, and at the same time the state might fail to prove the actual fact, making an acquittal of the defendant necessary, even if he had offered no evidence in his own favor. It is decisive of the present case that the two cases, of conviction in the one upon reputation, and acquittal in the other upon the actual fact, can stand together, with no legal conflict or inconsistency.

A further question is made with regard to the admissibility of evidence. The state offered evidence to prove, and the court finds that it was proved, that the defendant kept the place in question continuously from about the 1st of August, 1881, down to and after July, 1882. The complaint charged the keeping of a house where it was reputed that liquors were kept for sale, as being on the 10th day of March, 1882, and the state offered evidence that the house bore that reputation on that day. It was open to the defendant to show that he did not in fact at that time keep liquors with any such intent to sell, and thus to show that the reputation had no foundation in fact and was really a false one. This made the question of the actual fact a pertinent one. On this question the state, having before proved the continuous keeping of the place by the defendant till the July following the time charged, offered evidence to prove that the defendant actually had a supply of liquors on hand as if for sale in June of the same year. This was three months after the time charged and to which the state was directing its proof.

The defendant's counsel objected to the admission of this evidence on the ground that the fact that the defendant then kept liquors for sale did not tend to prove that he kept liquors to sell at a prior time, and especially at a time so long before, as he might have purchased them in the meantime, or if he had had them three months before, might not have kept them with an intention to sell them. It is obvious that such evidence would not be decisive, and of course would have far less weight with the lapse of time. It would not, however, be inadmissible. The jury would of course, under the advice of the court, consider the lapse of time and all the possibilities in the defendant's favor, and would not be likely to give any undue weight to the evidence. If the possession of the liquors with an apparent intent to sell them, the next day after the main fact charged, would have been admissible against the defendant, it is difficult to see what difference it can make, except in the weight of the evidence, if the possession of the liquors had been a week later or a month, or even three months, especially in connection with proof that the defendant had kept the place uninterruptedly during all the intervening time. It is to be observed that the point to be proved, in support of the reputation of the place, was an actual intent to sell the liquors that were kept. This matter of intent is not one of change from day to day, but one of continuance, and generally for a considerable time precedes the procurement of the liquors. The fact, therefore, that one who has kept a place for a year has a stock of liquors on hand at the place as if for sale, creates a probability, more or less strong, that the intent then existing existed three months before.

There is no error in the rulings of the court.

In this opinion the other judges concurred.