## STEINFELDT v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. February 1, 1915. Rehearing Denied March 9, 1915.)

### No. 2444.

COMMERCE ⊕⟶31—FOREIGN COMMERCE—REGULATIONS—IMPORTATION OF OPIUM —CONSTITUTIONALITY OF STATUTE.

Act Feb. 9, 1909, c. 100, § 2, 35 Stat. 614 (Comp. St. 1913, § 8801), making punishable one who receives, conceals, buys, or sells opium prepared for smoking, knowing it to have been imported contrary to law, is a valid exercise of the power to regulate foreign commerce, since the acts therein prohibited encourage and induce the unlawful importation.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 24; Dec. Dig. ⊕⟶31.]

In Error to the District Court of the United States for the First Division of the Northern District of California; M. T. Dooling, Judge.

Max Steinfeldt was convicted of receiving and concealing opium prepared for smoking purposes, knowing it to have been unlawfully imported, and he brings error. Affirmed.

Bert Schlesinger and P. S. Ehrlich, both of San Francisco, Cal., for plaintiff in error.

John W. Preston, U. S. Atty., and Walter E. Hettman, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT and ROSS, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. The plaintiff in error was convicted under an indictment which charged him with receiving and concealing opium prepared for smoking purposes, knowing the same to have been imported into the United States contrary to law; the indictment having been brought under the last portion of section 2 of the Act of February 9, 1909 (35 Stats. at Large, 614, c. 100 [Comp. St. 1913, § 8801]). The plaintiff in error admits that the first portion of the section, which prohibits the importation of opium into the United States, is constitutional, but denies the constitutionality of the portion thereof under which he was indicted and convicted, and he contends, in effect, that the point at which opium unlawfully imported into the United States is transferred to the possession of another, is the disappearing point of the authority of the United States over the same, and that at that point the opium loses its identity as an article of foreign commerce, and becomes mixed with the taxable property of the state, and becomes subject to the police power of the state to regulate the public health, morals, and social welfare of the citizens of the state, and is no longer subject to federal authority.

The contention cannot be sustained. We may assume, as the plaintiff in error contends, that the act under consideration was passed under the authority of Congress to regulate commerce with foreign nations, and that it is an absolute prohibition of the importation of opium, and

is not the exercise of the authority of Congress to levy duties, imposts, and excises; but we find no ground for holding that the authority of Congress does not go the full extent of the legislative act in question. To receive or conceal opium after it is imported, and with knowledge of its illegal importation, is in effect to participate in the illegal importation. It is an act which encourages, induces, and supplements the act of the illegal importer. This is what the plaintiff in error did. Opium was found in his possession, and he knew that it had been imported contrary to law. In a similar case, Judge McPherson said that:

"The offender's possession of such opium within the territory of the United States—his possession of it elsewhere is not now in question—is sufficient evidence of guilt to justify a jury in convicting." United States v. Caminata (D. C.) 194 Fed. 903.

The act of February 9, 1909, is similar in its general provisions to section 3082 of the Revised Statutes (Comp. St. 1913, § 5785), which provides that one who "shall fraudulently or knowingly * * * receive, conceal," etc., "merchandise, contrary to law, * * * knowing the same to have been imported contrary to law, shall be" subject to fine, etc. Under that law it has been held that, where a defendant was found in possession of smuggled goods, it was incumbent upon him to explain his possession to the satisfaction of the jury, and that otherwise he would be found guilty. United States v. Fraser (C. C.) 42 Fed. 140; Reagan v. United States, 157 U. S. 301, 15 Sup. Ct. 610, 39 L. Ed. 709. In the case last cited, Reagan was found guilty of receiving into his possession and concealing 40 head of cattle which had been smuggled into the United States fraudulently and knowingly and with intent to defraud the United States. Those cases are analogous to the case at bar, and the principle involved is the same.

The case is distinguishable from United States v. Gould, 25 Fed. Cas. 1375, and Keller v. United States, 213 U. S. 138, 29 Sup. Ct. 470, 53 L. Ed. 737, 16 Ann. Cas. 1066, cited by the plaintiff in error. In the first of those cases the indictment did not allege that the defendant held the slave knowing her to have been unlawfully imported, and although in the Keller Case it was held that the portion of Act February 20, 1907, c. 1134, § 3, 34 Stat. 898 (Comp. St. 1913, § 4247), which makes it a felony to harbor alien prostitutes, was unconstitutional as to one who harbored such a person without knowledge of her alienage or her unlawful coming into the United States, on the ground that such a regulation was matter within the police power reserved to the state, the distinction to be observed between that case and this is the fact that the harboring which was forbidden by law had nothing to do with the unlawful importation, was entirely dissociated therefrom, and was purely a regulation as to dealings by persons who, in the matter involved, were subject only to state regulation. The plaintiff in error cites, also, Hipolite Egg Co. v. United States, 220 U. S. 45, 31 Sup. Ct. 364, 55 L. Ed. 364, Savage v. Jones, 225 U. S. 501, 32 Sup. Ct. 715, 56 L. Ed. 1182, and Zakonaite v. Wolf, 226 U. S. 272, 33 Sup. Ct. 31, 57 L. Ed. 218; but we find nothing decided therein that is pertinent to the case at bar.

The judgment is affirmed.