## YEE HEM *v.* THE UNITED STATES.

ERROR TO THE DISTRICT COURT OF THE UNITED STATES FOR
THE NORTHERN DISTRICT OF OHIO.

No. 303.   Argued March 19, 1925.—Decided April 27, 1925.

1. Congress has power to prohibit the importation of opium and,
   as a measure reasonably calculated to aid in the enforcement
   of the prohibition, to make its concealment, with knowledge of
   its unlawful importation, a crime.   P. 183.

2. The Act of February 9, 1909, §§ 1 and 2, as amended, January
   17, 1914, prohibited the importation of smoking opium after April
   1, 1909, made it an offense to conceal such opium knowing it to
   have been imported contrary to law, and provided that possession
   by the defendant " shall be deemed sufficient evidence to author-
   ize conviction unless the defendant shall explain the possession
   to the satisfaction of the jury."   Section 3 provided that on and
   after July 1, 1913, all smoking opium within the United States
   should be presumed to have been imported after April 1, 1909,
   and that the burden of proof should be on the claimant or ac-
   cused to rebut the presumption.   *Held* that the presumptions thus
   created are reasonable and do not contravene the due process of
   law and the compulsory self-incrimination clauses of the Fifth
   Amendment.   P. 183.

Affirmed.

ERROR to a sentence upon conviction of the offense of
concealing smoking opium with knowledge that it had
been illegally imported.

*Mr. Gerard J. Pilliod,* with whom *Mr. Joseph C.
Breitenstein* was on the brief, for plaintiff in error.

The statute rests upon the authority of Congress to re-
strict imports, and the jurisdiction of the court was de-
rived accordingly.   The statute denounces primarily the

unlawful importation of opium and declares such impor-
tation after April, 1909, to be unlawful, except for cer-
tain purposes and under certain regulations.' Up to this
point the authority of Congress is unquestioned. But the
legislators sought to go further. As in the Harrison Act
they desired to reach the mere possession of smoking
opium and fasten to such possession a penal responsibil- ·
ity to the Federal Government. To achieve this purpose
it was necessary to infuse into "possession" a criminal
element. allying it with the original source of congres-
sional authority and federal jurisdiction, and *scienter*
was therefore employed to give to the offense a federal
tinge. "Knowing the same to have been imported con-
trary to law" constitutes a necessary ingredient of the of-
fense, and the duty therefore rests upon the Government
to prove, first, that the opium had been in fact imported
contrary to law, second, that the accused had knowledge
of that fact. Such facts would generally be difficult if
not impossible of proof, and the statute therefore pro-
vides a special rule of evidence to meet the exigency, and
effectually relieves the prosecution of the burden and
places it upon the defendant. It is not contended that a
rigid rule exists derived from the common law or the
principles of the Constitution which prohibits Congress
from constituting certain facts presumptive or *prima facie*
evidence of guilt, as, for instance, the possession of nar-
cotics under the Narcotic Act. This may well be a rea-
sonable exercise of legislative power, though fraught with
danger and to be jealously confined. The question is
whether Congress has exceeded proper limits in thus cre-
ating a special rule of evidence profoundly affecting the
constitutional privileges of the accused.

If crude opium or its derivative could under no cir-
cumstances be imported into the United States, the prob-
lem would be simple indeed; but crude opium may be
lawfully imported, may be lawfully converted into smok-

ing opium, and so diverted. Shall mere restriction be construed to charge the accused with scienter equally with absolute prohibition? If so, why were unlawful importation and guilty knowledge expressly made ingredients of the offense? Congress apparently contemplated the possibility that opium might be possessed which had not in fact been unlawfully imported, or which the accused did not know had been so imported. The presumption of accused's innocence therefore related to the fact of unlawful importation and his guilty knowledge thereof and the burden of proof continued with the Government until adequate evidence relating to these elements had been introduced. But no evidence was introduced and none was necessary under this statutory special rule of evidence as applied to the case and addressed to the jury in the court's charge. Possession needed to be proved, and possession only, and the presumption of innocence and its corollary responsibility, the burden of proof, were peremptorily interrupted by force of the statute, and the accused charged with guilty knowledge of unlawful importation stood before the jury condemned by the law because of possession.

Justice would require, at least in its Anglo-Saxon concept, that evidence be introduced on these subjects, and that the accused be confronted with witnesses. The benefit of salutary rules excluding inadmissible, incompetent and irrelevant testimony is denied him. The opportunity to expose falsehood and to discover malice, are forcibly withheld, for, if unlawful importation and guilty knowledge be difficult or impossible of proof by the Government, they are equally or more so by the accused, for aside from the practical difficulties surrounding the proof of origin of such opium he is forced to explain his possession to the satisfaction of the jury, which tends rather to expose him to condemnation of his personal vice, than to the consequences of a violation of a federal import law.

Assuming. that the ambiguous clause means that the defendant shall explain possession as being separate and free from unlawful importation and guilty knowledge, its practical effect is to compel him to be a witness against himself. Should he decline, the consequence is obvious. And this proposition cannot be evaded by the contention that the law contemplates explanatory evidence generally, aside from the testimony of the accused. The constitutional provision against self incrimination should receive a broad construction to secure immunity to the citizen from every kind of self accusation. *Wilson* v. *United States,* 221 U. S. 361; *Brown* v. *Walker,* 161 U. S. 591; *M. C. Knight* v. *United States,* 115 Fed. 962; *Slaughter House Cases,* 16 Wall. 36.

*Assistant Attorney General Donovan,* with whom the *Solicitor General* and *Mr. Harry S. Ridgely,* Attorney in the Department of Justice, were on the brief, for the United States.

Mr. Justice Sutherland delivered the opinion of the Court.

. Plaintiff in error was convicted in the court below of the offense of concealing a quantity of smoking opium after importation, with knowledge that it had been imported in violation of the Act of February 9, 1909, c. 100, 35 Stat. 614, as amended by the Act of January 17, 1914, c. 9, 38 Stat. 275. Sections 2 and 3 of the act as amended are challenged as unconstitutional, on the ground that they contravene the due process of law and the compulsory self-incrimination clauses of the Fifth Amendment of the federal Constitution.

Section 1 of the act prohibits the importation into the United States of opium in any form after April 1, 1909, except that opium and preparations and derivatives thereof, other than smoking opium or opium prepared for

smoking, may be imported for medicinal purposes only, under regulations prescribed by the Secretary of the Treasury. Section 2 provides, among other things, that if any person shall conceal or facilitate the concealment of such opium, etc., after importation, knowing the same to have been imported contrary to law, the offender shall be subject to fine or imprisonment or both. It further provides that whenever the defendant on trial is shown to have, or to have had, possession of such opium, etc., " such possession shall be deemed sufficient evidence to authorize conviction unless the defendant shall explain the possesion to the satisfaction of the jury." Section 3 provides that on and after July 1, 1913, " all smoking opium or opium prepared for smoking found within the United States shall be presumed to have been imported after the first day of April, nineteen hundred and nine, and the burden of proof shall be on the claimant or the accused to rebut such presumption."

The plaintiff in error, at the time of his arrest in August, 1923, was found in possession of and concealing a quantity of smoking opium. The lower court overruled a motion for an instructed verdict of not guilty, and, after stating the foregoing statutory presumptions, charged the jury in substance that the burden of proof was on the accused to rebut such presumptions; and that it devolved upon him to explain that he was rightfully in possession of the smoking opium,—" at least explain it to the satisfaction of the jury." The court further charged that the defendant was presumed to be innocent until the government had satisfied the minds of the jurors of his guilt beyond a reasonable doubt; that the burden to adduce such proof of guilt beyond the existence of a reasonable doubt rested on the government at all times and throughout the trial; and that a conviction could not be had " while a rational doubt remains in the minds of the jury."

The authority of Congress to prohibit the importation of opium in any form and, as a measure reasonably calculated to aid in the enforcement of the prohibition, to make its concealment with knowledge of its unlawful importation a criminal offence, is not open to doubt. *Brolan* v. *United States,* 236 U. S. 216; *Steinfeldt* v. *United States,* 219 Fed. 879. The question presented is whether Congress has power to enact the provisions in respect of the presumptions arising from the unexplained possession of such opium and from its presence in this country after the time fixed by the statute.

In *Mobile, etc., R. R.* v. *Turnipseed,* 219 U. S. 35, 42, 43, this Court, speaking through Mr. Justice Lurton, said:

" The law of evidence is full of presumptions either of fact or law. The former are, of course, disputable, and the strength of any inference of one fact from proof of another depends upon the generality of the experience upon which it is founded. . . .

" Legislation providing that proof of one fact shall constitute *prima facie* evidence of the main fact in issue is but to enact a rule of evidence, and quite within the general power of government. Statutes, National and state, dealing with such methods of proof in both civil and criminal cases abound, and the decisions upholding them are numerous. . . .

" That a legislative presumption of one fact from evidence of another may not constitute a denial of due process of law or a denial of the equal protection of the law it is only essential that there shall be some rational connection between the fact proved and the ultimate fact presumed, and that the inference of one fact from proof of another shall not be so unreasonable as to be a purely arbitrary mandate. So, also, it must not, under guise of regulating the presentation of evidence, operate to preclude the party from the right to present his defense to the main fact thus presumed."

See also, *Luria* v. *United States*, 231 U. S. 9, 25; *State* v. *Moriarty*, 50 Conn. 415, 417; *Commonwealth* v. *Williams*, 6 Gray 1, 3; *State* v. *Sheehan*, 28 R. I. 160.

The legislative provisions here assailed satisfy these requirements in respect of due process. They have been upheld against similar attacks, without exception so far as we are advised, by the lower federal courts. *Charley Toy* v. *United States*, 266 Fed. 326, 239; *Gee Woe* v. *United States*. 250 Fed. 428; *Ng Choy Fong* v. *United States*, 245 Fed. 305; *United States* v. *Yee Fing*, 222 Fed. 154; *United States* v. *Ah Hung*, 243 Fed. 762 764. We think it is not an illogical inference that opium, found in this country more than four years (in the present case, more than fourteen years) after its importation had been prohibited, was unlawfully imported. Nor do we think the further provision, that possession of such opium in the absence of a satisfactory explanation shall create a presumption of guilt, is "so unreasonable as to be a purely arbitrary mandate." By universal sentiment, and settled policy as evidenced by state and local legislation for more than half a century, opium is an illegitimate commodity, the use of which, except as a medicinal agent, is rigidly condemned. Legitimate possession, unless for medicinal use, is so highly improbable that to say to any person who obtains the outlawed commodity, " since you are bound to know that it cannot be brought into this country at all, except under regulation for medicinal use, you must at your peril ascertain and be prepared to show the facts and circumstances which rebut, or tend to rebut, the natural inference of unlawful importation, or your knowledge of it," is not such an unreasonable requirement as to cause it to fall outside the constitutional power of Congress.

Every accused person, of course, enters upon his trial clothed with the presumption of innocence. But that presumption may be overcome, not only by direct proof, but, in many cases, when the facts standing alone are

not enough, by the additional weight of a countervailing legislative presumption. If the effect of the legislative act is to give to the facts from which the presumption is drawn an artificial value to some extent, it is no more than happens in respect of a great variety of presumptions not resting upon statute. See *Dunlop* v. *United States,* 165 U. S. 486, 502-503; *Wilson* v. *United States,* 162 U. S. 613, 619. In the *Wilson* case the accused, charged with murder, was found, soon after the homicide, in possession of property that had belonged to the dead man. This Court upheld a charge of the trial court to the effect that such possession required the accused to account for it, to show that as far as he was concerned the possession was innocent and honest, and that if not so accounted for it became " the foundation for a presumption of guilt against the defendant."

The point that the practical effect of the statute creating the presumption is to compel the accused person to be a witness against himself may be put aside with slight discussion. The statute compels nothing. It does no more than to make possession of the prohibited article *prima facie* evidence of guilt. It leaves the accused entirely free to testify or not as he chooses. If the accused happens to be the only repository of the facts necessary to negative the presumption arising from his possession, that is a misfortune which the statute under review does not create but which is inherent in the case. The same situation might present itself if there were no statutory presumption and a *prima facie* case of concealment with knowledge of unlawful importation were made by the evidence. The necessity of an explanation by the accused would be quite as compelling in that case as in this; but the constraint upon him to give testimony would arise there, as it arises here, simply from the force of circumstances and not from any form of compulsion forbidden by the Constitution.

*Judgment affirmed.*