### HOOPER et al. v. UNITED STATES.

(Circuit Court of Appeals, Ninth Circuit. December 20, 1926.)

No. 4945.

1. Poisons �köm9—Statute making possession of narcotic drugs presumptive evidence of unlawful importation applies to all such drugs (Act Feb. 9, 1909, § 2, as amended by Jones-Miller Act, § 1, subd. [f], being Comp. St. § 8801).

The provision of Act Feb. 9, 1909, § 2, as amended by Jones-Miller Act, § 1, subd. (f), being Comp. St. § 8801, making possession of narcotic drugs presumptive evidence of their importation contrary to law, is constitutional and applies in a prosecution relating to any such drugs, whether their importation is wholly prohibited or their importation is restricted.

2. Courts ⊜⊸96(2)—Decision of Supreme Court holding statute valid is binding until overruled.

Decision of the Supreme Court holding statute constitutional is binding on inferior courts until directly overruled.

**3. Poisons ⬳9—Evidence held to sustain conviction of selling narcotic drugs.**

Evidence *held* sufficient to sustain conviction of defendant for knowingly participating in sale of morphine.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Criminal prosecution by the United States against Walter S. Hooper and John Haanstra. Judgment of conviction, and defendants bring error. Affirmed.

R. B. McMillan, of San Francisco, Cal., for plaintiff in error Haanstra.

Soren X. Christensen, of San Francisco, Cal., for plaintiff in error Hooper.

Geo. J. Hatfield, U. S. Atty., and T. J. Sheridan, Asst. U. S. Atty., both of San Francisco, Cal.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

GILBERT, Circuit Judge. The plaintiffs in error were defendants in an indictment, the first count of which charged them with violation of the provisions of the Harrison Narcotic Act (Comp. St. §§ 6287g-6287q) by selling 150 grains of opium, and the second count charged that on the same day they violated the Jones-Miller Narcotic Act (42 Stat. 596) by willfully, etc., receiving, concealing, buying, selling, and facilitating the transportation and concealment after importation of two packages of morphine and three packages and two capsules of cocaine which they knew had been imported into the United States contrary to law. The defendant Hooper was found guilty on both counts. Haanstra was found guilty only on the first count.

[1] The defendant Hooper presents to this court the single contention that section 2 of Act Feb. 9, 1909, as amended by section 1, subdivision (f), of the Jones-Miller Act (Comp. St. § 8801) was insufficient to contain all the elements of the crime charged, and that it was necessary to prove affirmatively that the narcotics had been unlawfully imported and adduce evidence that the drug was in fact imported. The constitutionality of that provision of the law was sustained in Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904. It is argued that the decision in that case is not controlling here, for the reason that the court held only that the possession of smoking opium might lawfully sustain a presumption of unlawful importation, and it is contended that the section has no application to a case such as this which involves narcotic drugs other than smoking opium for the reason that morphine and cocaine may lawfully be imported under certain regulations, whereas the importation of smoking opium is absolutely prohibited. We find no ground for the alleged distinction. The presumption of unlawful importation may attach in either case, for it is a prima facie presumption only, leaving with the accused the burden of proving lawful possession. Ng Sing v. United States (C. C. A.) 8 F.(2d) 919; Rosenberg v. United States (C. C. A.) 13 F.(2d) 369.

[2] The defendant Haanstra contends that the Harrison Anti-Narcotic Act is unconstitutional, and he relies upon the fact that, while in United States v. Doremus, 249 U. S. 86, 39 S. Ct. 214, 63 L. Ed. 493, the majority of the court held the act constitutional, the finality of that decision was questioned in United States v. Daugherty, 269 U. S. 360, 46 S. Ct. 156, 70 L. Ed. 309, where it was intimated that more recent decisions of the court might thereafter necessitate a review of that question. But as yet there has been no such review, and we are bound by the decision in the Doremus Case. Its conclusiveness was recognized in Teter v. United States (C. C. A.) 12 F.(2d) 224, of which decision it is to be noted that the Supreme Court has denied certiorari.

[3] Haanstra moved the court for an instructed verdict of acquittal, and he now insists that there was no evidence to sustain his complicity in the offense charged. Jourdin, a narcotic agent of the Revenue Service, testified that at an agreed time and place he and an informant were present to purchase morphine from Hooper; that the two defendants drove by, turned the corner and stopped, and Hooper got out of the machine and had a conversation with the informant after which the defendants drove away; that on the following evening, the witness having gone to a certain designated corner, Hooper drove up and said to him, "What do you want?" to which he answered, "Half an ounce of morphine;" that Hooper said, "All right, stay here;" that Hooper drove away, and shortly thereafter came back and took the witness into his auto, and drove around one or two blocks; that the witness gave Hooper $32.50 for the morphine; that they came to a point where Hooper parked his machine right behind the machine of Haan-

stra; that Hooper walked over to the latter and had some conversation with him, and then returned to his own machine and drove around a few more blocks, finally returning to the point where Haanstra's machine was parked; that Hooper told the witness, "Go over and get in that machine;" that the witness went to Haanstra's machine, the door of which Haanstra opened for him to enter; that there was another man in the machine with Haanstra; that, while driving around, Haanstra appeared very nervous; that at one time Haanstra said, "That looks like Mr. Elliott and his wife; she usually goes with him; sometimes to make cases" (it was in the evidence that Elliott was an inspector and that his wife did at times accompany him in his investigations); that at one time Haanstra turned the lights on the witness, observing, "I didn't get a very good look at you," and then said, "Oh, yes, you used to buy from Curley;" that Haanstra, when he stopped his machine, kept the motor running; that he became impatient at Hooper's delay; that Haanstra said, "Well, he must have blew a tire or something; of course, the first thing you think of is a knock-over" (a phrase which meant an arrest); that the other man in the car said to Haanstra, "I think I will go home and you bring it up to me;" that Haanstra said, "No; if he don't come pretty soon, I will go and weigh it up myself;" that shortly thereafter Hooper appeared and blew his horn, to which Haanstra answered with his horn; that Hooper left a clearance of some feet between his machine and Haanstra's, and Haanstra said to the witness, "All right, get out;" that the witness got out, and Hooper walked up, placed his hands in his overcoat pocket, and, delivering the package of narcotics, said, "Here; get out; beat it;" that, as Hooper started to enter his machine, the witness attempted to arrest him, but that Hooper broke away; that the witness shouted to Haanstra to stop, declaring that he was a federal officer, but that Haanstra made a rapid flight down the street. As indicating Haanstra's participation in the offense charged, the testimony amounted to more than suspicious circumstances. If credited by the jury, as it evidently was, it was sufficient to sustain the charge; and it was doubtless strengthened rather than weakened by Haanstra's denial of the incriminating portions thereof.

We find no error. The judgment is affirmed.