### FRANK et al. v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
December 12, 1929.

No. 8619.

John S. Bates, of Kansas City, Mo., for appellants.

Harry L. Thomas, Asst. U. S. Atty., of Kansas City, Mo. (William L. Vandeventer, U. S. Atty., of Kansas City, Mo., on the brief), for appellee.

Before KENYON and BOOTH, Circuit Judges, and REEVES, District Judge.

BOOTH, Circuit Judge. On April 24, 1928, appellants were indicted under the Narcotic Drugs Import and Export Act (42 Stat. 596 [21 USCA §§ 171–177, 180, 182, 184, 185]). The indictment contained two counts. Count 1 charged that on April 18, 1928, they unlawfully received and concealed morphine, a derivative of opium, which had theretofore been imported into the United States contrary to law, and that they knew that it had been unlawfully imported. Count 2 charged that on April 19, 1928, they unlawfully facilitated the transportation of morphine which had been imported into the United States contrary to law, and that they knew that it had been unlawfully imported.

At the trial defendant Frank was found guilty on both counts; defendant Nelson was found not guilty on the first count, and guilty on the second.

There was evidence tending to establish the following facts: a government informer, George Gotsis by name, engaged a room at a rooming house or hotel operated by appellant Frank in Kansas City, Mo.; appellant Nelson also had a room there. A few days prior to April 18, 1928, appellant Frank said to Gotsis, "I understand you are a purchaser of narcotics"; Gotsis admitted it; appellant Frank then said, "I might get it for you"; two or three days later, while at his place of work he was told that appellant Nelson wanted him at the hotel. On going to the hotel, appellant Frank said to him, "Did you see Nelson, he was looking for you; wanted to ·sell you some dope?" He met appellant Nelson, who said, "How much stuff do you want?" Gotsis replied, "About an ounce." Nelson said, "This stuff costs $55.00; how much have you been paying for it?" Gotsis said he had been getting it for $45. Nelson said, "I can get it in 15 minutes if you want it." Gotsis replied, "See what you can do." Gotsis then left. On April 18th, while going to his room, Gotsis met appellant Frank, who told him to go to room 6. He went there and found Nelson. Appellants told Gotsis that they could get the stuff any time he wanted it. Gotsis said he did not have the money. Nelson said, "I have got the stuff, and I want to show it to you." A package was produced, and appellant Frank tried to open it, but had some difficulty; and Nelson opened it and showed Gotsis the morphine. Gotsis said he would wire his brother for the money, and made arrangements to buy the morphine the next morning. Gotsis then reported to government agents and made arrangements with them to make the purchase, delivery to be made at the corner of Sixth and Broadway in said city. Gotsis then went back and told appellants he had a party with the money to make the purchase, and the delivery was to be made at Sixth and Broadway at 3 p. m. Shortly before 3 p. m. Gotsis and appellants drove in Nelson's car to Sixth and Broadway. Appellant Frank had the morphine in her pocket. On reaching the place designated, Gotsis got out and went a short distance and met the government agents. One of the agents then went to the car with $55 in his hand, but appellant Frank refused to deal with him, and he took the package of morphine out of her pocket and arrested both her and Nelson. There was no evidence that the morphine had been unlawfully imported, or that the appellants knew that it had been unlawfully imported.

Several questions were raised by the defendants on the trial; among them, whether there was an entrapment of the defendants; whether the package of morphine taken by the government agent from appellant Frank and introduced in evidence should have been suppressed, on the ground that it had been illegally taken from appellant Frank; and whether there was any evidence to go to the jury to support a verdict of guilty of the defendants.

The last point is the only one which has been properly preserved in the record for the consideration of this court.

Appellants contend that both counts of the indictment required evidence (a) that the

morphine had been unlawfully imported; and (b) that the appellants knew such to be the case. It is conceded that there was no testimony on either of these matters.

The indictment is based upon subdivision (c) of section 2 of the Act of February 9, 1909 (35 Stat. 614), as amended by the Act of May 26, 1922 (42 Stat. 596 [21 USCA § 174]), which reads as follows: "(c) That if any person fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or assists in so doing, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law, such person shall upon conviction be fined not more than $5,000 and imprisoned for not more than ten years."

■ In order to secure a conviction under count 1 of the indictment, it was necessary that there should be proof (1) that the morphine was concealed by the accused; (2) that it had been unlawfully imported; (3) that the accused knew that it had been unlawfully imported.

■ In order to secure a conviction under count 2 of the indictment it was necessary that there should be proof (1) that the accused had facilitated the transportation of the morphine; (2) that it had been unlawfully imported; (3) that the accused knew that it had been unlawfully imported.

■ As proof of the unlawful importation and the knowledge thereof by appellants the government relied upon the presumption contained in subdivision (f) of section 2 of the Act of February 9, 1909 (35 Stat. 614), as amended by the Act of May 26, 1922 (42 Stat. 596 [21 USCA § 174]), reading as follows: "(f) Whenever on trial for a violation of subdivision (c) the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction, unless the defendant explains the possession to the satisfaction of the jury."

The appellants contend that, notwithstanding the provision of subdivision (f), it is still necessary to prove unlawful importation and knowledge thereof by the accused.

We think the contention of the appellants cannot be sustained. In Yee Hem v. United States, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904, the same presumption, as well as a similar presumption contained in section 3 (21 USCA Sec. 181) of the same statute, but relating to smoking opium, was upheld as valid, and given effect. The only difference between the Yee Hem case and the case at bar is that the former related to the possession of smoking opium, while the latter relates to the possession of morphine, a derivative of opium. The importation of one is wholly prohibited; the importation of the other is restricted. We think the difference is not such as to render the presumption involved in the case at bar invalid when applied to morphine. The reasoning in the Yee Hem case is broad enough to cover both kinds of opium. The court in its opinion in that case said (page 184 of 268 U. S., 45 S. Ct. 470, 471, 69 L. Ed. 904): "By universal sentiment, and settled policy as evidenced by state and local legislation for more than half a century, opium is an illegitimate commodity, the use of which, except as a medicinal agent, is rigidly condemned. Legitimate possession, unless for medicinal use, is so highly improbable that to say to any person who obtains the outlawed commodity, 'since you are bound to know that it cannot be brought into this country at all, except under regulation for medicinal use, you must at your peril ascertain and be prepared to show the facts and circumstances which rebut, or tend to rebut, the natural inference of unlawful importation, or your knowledge of it,' is not such an unreasonable requirement as to cause it to fall outside the constitutional power of Congress."

Furthermore, the exact presumption involved in the case at bar has been held valid by the Ninth Circuit Court of Appeals in Hooper v. United States, 16 F.(2d) 868, 869. The court, referring in its opinion to the distinction sought to be made between the Hooper Case and the Yee Hem Case, said: "It is argued that the decision in that case is not controlling here, for the reason that the court held only that the possession of smoking opium might lawfully sustain a presumption of unlawful importation, and it is contended that the section has no application to a case such as this which involves narcotic drugs other than smoking opium for the reason that morphine and cocaine may lawfully be imported under certain regulations, whereas the importation of smoking opium is absolutely prohibited. We find no ground for the alleged distinction. The presumption of unlawful importation may attach in either case, for it is a prima facie presumption only, leaving with the accused the burden of proving lawful possession." See, also, Rosenberg v. United States (C. C. A.) 13 F.(2d) 369;

Hood v. United States, 23 F.(2d) 472 (C. C. A. 8).

The case of Kalos v. United States, 9 F. (2d) 268 (C. C. A. 8), relied upon by appellants, is not inconsistent with the foregoing conclusions. The presumption of the statute (subdivision [f] of section 2, 35 Stat. 614, as amended by 42 Stat. 596 [21 USCA § 174]) was not discussed for the all-sufficient reason that possession of the morphine, i. e., a possession with knowledge that it was morphine, was not shown. There was thus no basis in the Kalos Case for invoking the presumption of the statute. In the case at bar, possession of the article with knowledge that it was morphine, was shown.

Judgment affirmed.