## COPPERTHWAITE et al. v. UNITED STATES.

Circuit Court of Appeals, Sixth Circuit.
February 4, 1930.

No. 5415.

Charles Fennell, of Lexington, Ky. (King Swope, of Lexington, Ky., on the brief), for appellants.

Sawyer A. Smith, of Covington, Ky., for the United States.

Before DENISON and HICKS, Circuit Judges, and HAHN, District Judge.

DENISON, Circuit Judge. Appellants were convicted under both counts of an indictment, the first of which charged the purchase and sale of unstamped morphine in violation of the Harrison Anti-Narcotic Act (Sec. 692, Tit. 26, USCA), and the second of which charged, as of the same time and place, the buying and selling of the same amounts of morphine which they knew had been unlawfully imported into the United States, thus constituting an offense under the Narcotic Import Statute (Sec. 174, Tit. 21, USCA). They were sentenced to five years imprisonment under the first count and ten years under the second count—the two terms to be concurrent.

The first objection is that the two statutes are so far repugnant that the later one (Harrison Act, 1914) repeals the earlier (Import Act, 1909), or, at least, that prosecutions under both, if based upon the same act or conduct, are inconsistent and election should have been compelled. We cannot sustain this objection. Cases are common where a single act is a violation of two statutes. Here there is no repugnancy. The Import Act is a customs law, the Harrison Act is a revenue law. When a single act is a violation of two laws, it may be penalized in each; but this conclusion leads to an inquiry as to double punishment. The same act may not be twice punished by the same sovereignty, merely because it violates two laws. Identity, as to double punishment as well as to double jeopardy, is shown if the same evidence necessary to prove either offense will also necessarily establish the other and this relation is reciprocal (and perhaps even if not reciprocal); in other words, can either be shown without disclosing the other? Reynolds v. U. S. (C. C. A. 6) 280 F. 1, 2; Miller v. U. S. (C. C. A.) 300 F. 529, 534. When thus tested, there was here double punishment. The entire proof in this case consisted of evidence that the defendants agreed to furnish and sell morphine to a purchaser and thereafter did have it (unstamped) in their possession and deliver it to him. By virtue of the pre-

sumption declared in the Harrison Act, this possession tended to show the forbidden purchase; and the same possession also tended—by virtue of the presumption declared in the Import Act—to show unlawful importation and defendants' knowledge. In such case the government may punish for either offense, but we think the supporting evidence does not so materially vary as to justify two punishments, merely because two inferences are attached by different statutes to the same evidential basis.

■■ However, this does not avail defendants if the conviction and sentence under count two are valid; hence, that must be examined. To what extent statutory presumption can be validly created has been the subject of much inquiry. The presumptions arising by these two statutes are so related and one so affected by rulings upon the other that both must be considered. They must be examined in the light of the restriction that they cannot be merely arbitrary, but the declared inference must have some rational basis; and of course they should be considered so as, if possible, to preserve their validity under this restriction.[1]

Looking first at the Harrison Act: The declaration is that possession of the unstamped package shall be evidence of "violation of this section," that is to say, evidence of some act which has been prohibited by this section. By this section several things have been prohibited, and as to some of them it is difficult to see any rational basis for this declared inference; but one of the things prohibited is the purchase, and certainly possession supports a reasonable inference of previous purchase by the possessor. To this extent, therefore, this provision of the Harrison Act presents no question now troublesome. Casey v. U. S., 276 U. S. 413, 418, 48 S. Ct. 373, 72 L. Ed. 632. The Narcotic Importation Act first denounces knowingly importing into the United States, contrary to law, any narcotic drug, and punishes one who receives or buys or sells "any such narcotic drug after being imported or brought in, knowing the same to have been imported contrary to law," and then provides that the possession "of the narcotic drug" is sufficient evidence to authorize conviction, unless the possession is explained, etc. This means that the possession makes a prima facie showing of the three elements which, in a case like the present, are necessary to make out guilt: (a)

That defendant had bought or received the drug; (b) that this particular drug, so possessed, had been unlawfully imported; and (c) that defendant knew it. At first thought, it might seem a reasonable construction of this statute that the statutory inference only took effect after the unlawful importation had been proved, and that the element which will be established by the inference is the element (c), defendant's knowledge. The clause refers to possession of "*the* narcotic drug," and *the* narcotic drug under consideration is that which has been unlawfully imported. Such construction would conform to some familiar canons, and would not challenge any constitutional principle. However, that construction cannot survive comparison with the Yee Hem Case, 268 U. S. 178, 45 S. Ct. 470, 69 L. Ed. 904. The statute there involved was this same section, but while it was confined to opium (Sec. 2, Act of February 9, 1909 [35 Stat. 614]), and before its expansion to "any narcotic drug"; the only distinction in this respect being that it referred to possession of "*such* opium" instead of "*the* narcotic," and so the thought that the intent was to build the inference upon actual proof of importation was stronger than the same thought is in the present form of section 174 (21 USCA). This limiting construction was not presented to nor considered by the Supreme Court in the Yee Hem Case, but its conclusion was inconsistent with any such limitation, and the possible propriety of such construction was so obvious that we cannot assume the Supreme Court overlooked it. That court would be at liberty to say that its holding in this respect was sub silentio, and so not obligatory; we are not.

■ The rejection of the narrower and the adoption of the broader construction compel the decision of the constitutional question. Is the inference too arbitrary to be permitted? The recent decisions in Manley v. Georgia, 279 U. S. 1, 49 S. Ct. 215, 73 L. Ed. 575, and Western & A. Railroad v. Henderson, 279 U. S. 639, 49 S. Ct. 445, 73 L. Ed. 884, indicate the limits beyond which even a prima facie inference may not be carried; but here again, remembering that a constitutional question must usually be treated in the aspect presented by the facts of the particular case rather than of facts which might exist in other cases, we find that the Yee Hem Case cannot be substantially distinguished.

■ The argument for distinction is that the importation of smoking opium was unconditionally forbidden, and hence that its importation must have been unlawful and every

---

[1] See note "Statutory Presumptions and Due Process of Law," 43 Harvard Law Rev. page 100.

possessor must know it; while crude opium may lawfully be and is imported into the United States and morphine may be and· is manufactured in the United States in large quantities;[2] hence, as to morphine, the presumption that it was made abroad and unlawfully imported, to defendant's knowledge, is too arbitrary to be permitted. In reply it is said that smoking opium also might have been made in this country from lawfully imported crude opium; but this fact was not mentioned in the opinion nor apparently drawn to the attention of the court, and the possibility of such manufacture in this country from lawfully imported opium seems negligible. The claimed distinction is substantial enough so that we cannot take the decision as intended to cover all situations which might exist with reference to the possession of morphine; but we think the principle of the decision does reach the· facts of the present case. The package here consisted of ten tins, each containing one ounce.[3] There was no evidence of particularly careful wrapping as against the moisture of a sea voyage, and no such marks or labels indicating foreign origin as have appeared in some cases.[4] Each tin was marked "1 oz. morphin. hydrochl," in English letters. Considering, however, the comparatively large amount in the ten-tin package, the improbability that such amount could have been diverted from lawful manufacture in this country without discovery, the fact that very little of the morphine made in this country is of the hydrochloric form,[5] and the absence from the cans of any stamps indicating the tax payment and markings required in domestic manufacture, we deem it a reasonable inference that this particular morphine was of foreign manufacture or packing and therefore had been unlawfully imported, and that it is not unfair to presume that any one handling it ought to draw this inference. Upon such a view of the evidence furnished by the packages themselves, the statutory inference is not unreasonable, and these defend-ants cannot be heard to say that under some circumstances it might be unconstitutional. See Hooper v. U. S. (C. C. A. 9) 16 F.(2d) 868, 869.

We assume that no raw opium is commercially "produced" in this country. This we have supposed to be common knowledge; and the official reports and literature in connection with the subject all seem to make that assumption. The use of the word "produce" in section 1 of the Harrison Anti-Narcotic Act (38 Stat. 785) does not seem necessarily to imply any production of raw opium in this country at this time. The office of that word in the act would seem to be satisfied by applying it to a possible future production or by applying it to the various derivatives made in this country and as to which it is appropriate. But see comment by Mr. Justice Holmes in the Jin Fuey Moy Case, 241 U. S. at page ·401, 36 S. Ct. 658, 60 L. Ed. 1061.

The judgment is affirmed.

---

[2] In 1927 the imports of opium were 2,274,228 oz.; domestic sales as opium by importers and manufacturers 934,250 oz.; and domestic sales as morphine (including morphine compounds) 2,686,665 oz. (from Report of Com'r of Prohibition, 1928).

[3] These tins were made a part of the bill of exceptions, but retained by the Narcotic Agent. He has now emptied one can, retaining its contents, and filed the empty can as an exhibit with the clerk. All the cans were identical.

[4] See Treasury Department Report "Traffic in Opium, etc.," for fiscal year 1898, pp. 10–20, and pp. 27–32.

[5] Same report, p. 11.