NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

BRADLEY BIEGANSKI, *Appellant.*

No. 1 CA-CR 18-0093
FILED 9-3-2019

Appeal from the Superior Court in Navajo County
No. S0900CR201400118
S0900CR201500721
The Honorable Ralph E. Hatch, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Robert A. Walsh
*Counsel for Appellee*

Lou Spivack PC, Tucson
By Louis M. Spivack
*Counsel for Appellant*

Law Office of Lawrence Y. Gee PC, Tucson
By Lawrence Y. Gee
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Maria Elena Cruz joined.

---

**M c M U R D I E, Judge**:

¶1         Bradley Bieganski appeals his convictions and sentences for three counts of child molestation. Relying on *May v. Ryan*, 245 F. Supp. 3d 1145 (D. Ariz. 2017), *affirmed in part, vacated in part*, 76 Fed. Appx. 505, 506–07 (9th Cir. 2019), Bieganski contends that Arizona Revised Statutes ("A.R.S.") sections 13-1401, -1410, and -1407(E) (collectively, "child molestation statutes") were unconstitutional[1] and urges us to reconsider our supreme court's decision in *State v. Holle ("Holle II")*, 240 Ariz. 300 (2016). Bieganski further asserts that the superior court erred when it denied his motion for a new trial. For the reasons that follow, we affirm.

**FACTS AND PROCEDURAL BACKGROUND[2]**

¶2         From 2011 until his arrest in 2013, Bieganski operated a girls-only private Christian home-school called Kingdom Flight along with his wife and son. The arrest occurred after three girls attending Kingdom

---

[1]        The legislature recently amended the child molestation statutes. *See* H.B. 2283, 2018 Ariz. Sess. Laws, Ch. 266, §§ 1–3 (2d Reg. Sess.) (effective August 3, 2018). The amendment eliminated the affirmative defense of lack of sexual motivation in former A.R.S. § 13-1407(E). *Id*. § 2. The Legislature also included a definition of "[s]exual contact" in A.R.S. § 13-1401(A)(3)(b) that sexual contact "[d]oes not include direct or indirect touching or manipulating during caretaking responsibilities, or interactions with a minor or vulnerable adult that an objective, reasonable person would recognize as normal and reasonable under the circumstances." *Id*. § 1. When referring to the child molestation statutes, we refer to them as they existed at the relevant time of the offenses.

[2]        We view the facts in the light most favorable to upholding the verdict and resolve all reasonable inferences against Bieganski. *State v. Harm*, 236 Ariz. 402, 404, ¶ 2, n.2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

Flight (A.G., Y.L., and J.C.) accused Bieganski of touching their genitals when the victims were between the ages of 6 and 9. The genital contact primarily occurred during a Sunday morning bathing practice that Bieganski referred to as an "assembly line" in which he would hurriedly bathe six to eight Kingdom Flight girls in pairs within 30 minutes before departing for a church service.

¶3        The genital contact involved Bieganski touching and manually washing the girls' vaginas with his bare hand. In addition to the genital contact that occurred during the "assembly line" baths, Y.L. also accused Bieganski of touching her genitals on two other occasions: once when she was getting dressed after swimming and another time when she was in the Kingdom Flight girls' room.

¶4        Bieganski admitted at trial that he washed the girls' genitals with his bare hand during the Sunday baths, but under the affirmative defense provided by A.R.S. § 13-1407(E), asserted he was not motivated by a sexual interest. In a third indictment[3] resulting from the investigation of Bieganski, the grand jury charged him with seven counts of child molestation, class 2 felonies and dangerous crimes against children, and two counts of continuous sexual abuse of a minor, class 2 felonies and dangerous crimes against children.

¶5        At the conclusion of the State's case, the court granted Bieganski's motion for a judgment of acquittal regarding the continuous sexual abuse of a minor charges, and the State's motion to dismiss one of the child molestation charges involving J.C. The jury then convicted Bieganski of three counts of child molestation involving victims A.G. and J.C. but returned not guilty verdicts for the charges involving Y.L. Pursuant to A.R.S. § 13-705(M), the court sentenced Bieganski to two consecutive terms of 17 years' imprisonment, with 1576 days' presentence incarceration credit given to the first 17-year term. *See State v. Jackson*, 170 Ariz. 89, 94 (App. 1991) (presentence incarceration credit is applied only to one of the defendant's sentences if consecutive sentences are imposed). Bieganski timely appealed. We have jurisdiction under A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

---

[3]        The first grand jury charged Bieganski with three counts of child molestation, class 2 felonies, each pertaining to one of the three victims. A second indictment followed and was consolidated with the first. A jury trial proceeded on the consolidated indictment but ended in a mistrial. The third indictment issued before the retrial.

## DISCUSSION

### A.   The Child Molestation Statutes Did Not Violate Due Process by Shifting the Burden of Proof to Bieganski.

¶6          Relying on the federal district court's rationale in *May*, Bieganski argues that the child molestation statutes violate due process because they shift the burden of proof to the defendant regarding the issue of sexual motivation.[4] 245 F. Supp. 3d at 1164 ("[T]he burden-shifting scheme of Arizona's child molestation law . . . violates due process . . . ."). Our supreme court expressly rejected this argument in *Holle II*. 240 Ariz. at 308, ¶ 40 ("Treating lack of sexual motivation under [A.R.S.] § 13-1407(E) as an affirmative defense which a defendant must prove does not offend due process.").

¶7          We are required to follow our supreme court's decisions. *State v. Smyers*, 207 Ariz. 314, 318, ¶ 15, n.4 (2004) ("The courts of this state are bound by the decisions of [our supreme] court and do not have the authority to modify or disregard [its] rulings."). While we consider the opinions of the lower federal courts regarding the interpretation of the Constitution, such authority is not controlling on Arizona courts. *State v. Montano*, 206 Ariz. 296, 297, ¶ 1, n.1 (2003) ("We are not bound by the Ninth Circuit's interpretation of what the Constitution requires."); *State v. Vickers*, 159 Ariz. 532, 543, n.2 (1989) (declining to follow a Ninth Circuit decision which held Arizona's death penalty statute unconstitutional because that decision rested on "grounds on which different courts may reasonably hold differing views of what the Constitution requires"); *State v. Chavez*, 243 Ariz. 313, 314, ¶ 4, n.2, 318–19, ¶ 17 (App. 2017) (declining to follow district court decision that disagreed with Arizona Supreme Court authority). Accordingly, no error occurred, and we will not reexamine our supreme court's decision in *Holle II*.

### B.   The Child Molestation Statutes Did Not Violate Bieganski's "Right to Remain Silent."

¶8          Bieganski next argues that the child molestation statutes violated his "right to remain silent," an issue he did not raise in the superior

---

4          In relevant part, former A.R.S. § 13-1407(E) provided: "It is a defense to a prosecution pursuant to § 13-1404 or 13-1410 that the defendant was not motivated by a sexual interest." The superior court correctly instructed the jury regarding the affirmative defense that "[t]he defendant must prove . . . lack of sexual interest by a preponderance of the evidence."

court. Therefore, we will review Bieganski's self-incrimination claim for fundamental error only. *State v. Escalante*, 245 Ariz. 135, 138, ¶ 1 (2018). To prevail upon a claim of fundamental error, a defendant must first show that trial error exists. *Id.* at 142, ¶ 21. Once trial error has been established, we must determine whether the error is fundamental. *Id.*

**¶9** The Fifth and Fourteenth Amendments protect individuals from compelled self-incrimination at the federal and state levels. U.S. Const. amends. V, XIV, § 1; *see Malloy v. Hogan*, 378 U.S. 1, 6 (1964) (holding "that the Fifth Amendment's exception from compulsory self-incrimination is also protected by the Fourteenth Amendment against abridgment by the States"). The child molestation statutes contained no terms of compulsion, and furthermore, former A.R.S. § 13-1407(E) did not require a defendant to admit the underlying elements of the offense. Bieganski argues, nonetheless, that the child molestation statutes "virtually require[d]" a defendant's testimony. Any "virtual" effect is not protected by the privilege against compelled self-incrimination.

**¶10** Assigning the burden of production or persuasion to a defendant to prove an affirmative defense does not violate the privilege against self-incrimination. *See United States v. Rylander*, 460 U.S. 752, 758 (1983) (holding that the Fifth Amendment privilege should not be "convert[ed] from the shield . . . which it was intended to be into a sword whereby a claimant asserting the privilege would be freed from adducing proof in support of a burden which would otherwise have been his. None of our cases support this view.") (collecting cases); *Corbitt v. New Jersey*, 439 U.S. 212, 218 (1978) (holding a statute that made first-degree murder defendants who pleaded no contest eligible for sentence of less than life imprisonment did not violate Fifth Amendment privilege); *Williams v. Florida*, 399 U.S. 78, 84 (1970) ("That the defendant faces . . . a dilemma demanding a choice between complete silence and presenting a defense has never been thought an invasion of the privilege against compelled self-incrimination."); *State v. Gray*, 239 Ariz. 475, 479, ¶ 18 (2016) (requiring a defendant asserting an entrapment defense to admit the elements of the offense is not compelled self-incrimination). The child molestation statutes, therefore, did not violate Bieganski's privilege against compelled self-incrimination by requiring him to prove the affirmative defense. *See Gray*, 239 Ariz. at 479, ¶ 18.

**¶11** Moreover, Bieganski's argument ignores the evidentiary avenues available to prove the affirmative defense without a defendant's testimony. Bieganski utilized one such avenue by providing evidence from a forensic psychologist as an expert witness. Emphasizing this point, the

defendant in *Holle II* did not testify but instead presented his defense through other witnesses, which further confirms the absence of testimonial compulsion or necessity arising from the child molestation statutes. *State v. Holle* ("*Holle I*"), 238 Ariz. 218, 220–21, ¶ 4 (App. 2015), *vacated by Holle II*, 240 Ariz. at 311, ¶ 50; *accord Yee Hem v. United States*, 268 U.S. 178, 185 (1925) ("If the accused happens to be the only repository of the facts necessary to negate the presumption arising from his [drug] possession, that is a misfortune which the statute under review does not create but which is inherent in the case."). We find no trial error, much less fundamental error.

## C.    The Child Molestation Statutes Did Not Violate Due Process "As Applied" to Bieganski.

¶12    Bieganski also contends that the statutes are unconstitutional "as applied" to him. To support his contention, Bieganski relies on the discussion in *Holle II* concerning the possibility of an "as applied" constitutional challenge for a parent performing a caregiving task such as changing diapers. *Holle II*, 240 Ariz. at 310–11, ¶ 49 ("But if a prosecution actually were to result from such innocent behavior (*no such case has been cited*), an 'as applied' constitutional challenge would likely have merit in light of parents' fundamental, constitutional right to manage and care for their children." (emphasis added)).

¶13    The "as applied" discussion in *Holle II* occurred in a theoretical context and was not involved in the holding. *Holle II*, 240 Ariz. at 310–11, ¶ 49. The supreme court found that because the defendant's actions were "clearly inappropriate," they could not be construed as parenting or caregiving in any manner, and thus, the court did not address the issue further. *Id*. Bieganski's "as applied" argument fails for the same factual and legal reasons.

¶14    The evidence, including Bieganski's testimony and admissions, established that Bieganski performed the barehanded washing of each minor victim's genitals with no other adult present during a rushed Sunday morning bathing "assembly line" practice for which he did not

provide a logical "parental" explanation.[5] He conducted these washing practices even though the girls were old enough to bathe themselves. Bieganski never requested permission from any of the parents or guardians to participate personally in the bathing or manual genital washing of the girls, and never discussed the bathing practices the girls would be exposed to with him. Bieganski's wife helped provide care for the girls but did not wash the girls' genitals and was not involved in the "assembly line." She provided each girl with a washrag and soap and directed them to clean themselves. Although Bieganski later admitted to the jury that he performed the "washing" acts, when interviewed by law enforcement on the day of his arrest, he denied that the acts occurred, both to the officers and his wife during a phone call.

¶15        The jury rejected his efforts at establishing an affirmative defense based upon the evidence presented. The evidence supports the jury's determination that Bieganski's practices and acts maintain no reasonable connection to a legitimate parental exception as hypothetically contemplated in *Holle II*.  Hence, there was no error.

### D.    The Superior Court Did Not Commit Error by Denying the Motion for a New Trial.

¶16        Finally, Bieganski contends that the superior court erred when it denied his motion for a new trial. A court may grant a new trial if "the verdict is contrary to law or the weight of the evidence." Ariz. R. Crim. P. 24.1(c)(1). We review the court's decision on a motion for a new trial for an abuse of discretion. *State v. Parker*, 231 Ariz. 391, 408, ¶ 74 (2013). "A motion for new trial should be granted 'only if the evidence was insufficient to support a finding beyond a reasonable doubt that the defendant committed the crime.'" *Id*. (quoting *State v. Landrigan*, 176 Ariz. 1, 4 (1993)).

¶17        We review claims of insufficient evidence to support a verdict *de novo*. S*tate v. Bible*, 175 Ariz. 549, 595 (1993). "[W]e view the evidence in the light most favorable to sustaining the verdict and reverse only if no substantial evidence supports the conviction." *State v. Pena*, 209 Ariz. 503,

---

[5]        Bieganski testified that he used this practice to save time but was unable to provide direct answers regarding why the girls did not bathe for church on Saturday night, why he did not shorten his morning routine, or why they did not attend a later service. Bieganski also testified that he manually washed the girls' vaginas to conserve soap and because he viewed washcloths as "bacteria traps."

505, ¶ 7 (App. 2005). Substantial evidence is evidence that a reasonable person may accept as adequate to support a guilty verdict beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 411–12, ¶ 6 (2005). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto-Fong*, 187 Ariz. 186, 200 (1996) (quoting *State v. Scott*, 112 Ariz. 423, 424–25 (1973)).

¶18            Substantial evidence supports the convictions. As the superior court correctly instructed the jury, the crime of child molestation required proving the following elements:

1. Defendant intentionally or knowingly engaged in or caused a person to engage in any direct or indirect touching, fondling, or manipulation of any part of the genitals or anus by any part of the body or any object or causing a person to engage in such contact with a child;

2. The child was under 15 years of age.

Regarding the statutory elements, each victim was between the ages of six and nine and Bieganski used only his soap-covered bare hand to wash each victim's genitals. Bieganski performed these acts, in what might reasonably be construed as a contrived "assembly line" when each victim was old enough to bathe themselves. Bieganski never informed the victims' parents or guardians about his intentions or practices or sought permission to engage in them with the girls. No other person (such as his wife) performed similar bathing practices; his wife instead elected to toss a washcloth and soap to each girl while directing them to wash. A.G. first reported the acts to a school nurse independently, which thereby initiated the investigation, and the accusations were thoroughly investigated by forensic interviewers and law enforcement.

¶19            Reasonable inferences drawn from the evidence supports the jury's verdicts. *See State v. Fulminante*, 193 Ariz. 485, 494, ¶¶ 27-28 (1999) (finding that defendant's "several false, misleading, and inconsistent statements to police, other witnesses, and his wife," along with evidence of motive, opportunity, and the absence of a rational explanation, provided sufficient evidence to sustain a conviction). Bieganski testified and provided an expert witness to establish his lack of sexual motivation, but the jury found his defense unpersuasive regarding the A.G. and J.C. charges. Moreover, the jury's acquittal on the Y.L. charges demonstrates the jurors carefully considered the evidence. *See State v. Stuard*, 176 Ariz. 589,

600 (1993) (noting the jurors' decision to acquit the defendant of certain charges "demonstrate[d] the jury's careful and proper consideration of the evidence"). The evidence established each element of child molestation beyond a reasonable doubt, and thus, the superior court did not commit error when it denied the motion for a new trial.

**CONCLUSION**

**¶20**        For the foregoing reasons, we affirm Bieganski's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED:  AA