FRIEDMAN v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. November 16, 1921.)

No. 4.

1. **Customs duties ⬅129—Statute imposing penalty held applicable to importation of aigrettes, etc.**

Rev. St. § 3082 (Comp. St. § 5785), providing a penalty for fraudulently or knowingly importing or bringing into the United States any merchandise, contrary to law, etc., prescribes the penalty for importing of aigrettes, egret plumes, etc., in violation of Tariff Act October 3, 1913 § 1, Schedule N, par. 347 (Comp. St. § 5291).

2. **Witnesses ⬅293—Statute creating presumption as to possession of goods, not explained, does not compel defendant to testify.**

Rev. St. § 3082 (Comp. St. § 5785), providing that whenever, on a trial for fraudulently or knowingly importing merchandise contrary to law, etc., the defendant is shown to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize a conviction, unless defendant shall explain it to the satisfaction of the jury, does not compel defendant to be a witness against himself in violation of the Fifth Amendment, as defendant may rebut the presumption by resting on the prosecution's case, or by adducing explanatory testimony, and, in either event, cannot be convicted, unless his guilt is proved beyond a reasonable doubt.

3. **Criminal law ⬅822(11)—Instruction held not to place duty on defendant of testifying, or create presumption against himself.**

On a trial for fraudulently or knowingly importing aigrettes, etc., an instruction that there was a statute creating a presumption against defendant, if the merchandise was found in his possession, and he was called upon to make some explanation of his possession, when preceded and followed by instructions giving defendant the benefit of any reasonable doubt, did not, when taken with the context, require defendant to testify, in order to explain his possession, or suggest, in violation of Act March 16, 1878 (Comp. St. § 1465), that a failure to testify created a presumption against him.

4. **Indictment and information ⬅119, 167—Allegations as to date and steamer of unlawful importation held superfluous, and not necessary to be proved.**

Under an indictment charging defendant with fraudulently and knowingly importing aigrettes, etc., allegations that the goods were imported on a certain date and by a certain steamer were superfluous, and it was not necessary to prove them.

5. **Criminal law ⬅1038(4), 1056(1)—Refusal to restate law in language of oral request, not presented as required by rules, and to which no exception was taken, not reversible error.**

Under rule 7 of the common-law rules of the District Court for the Southern District of New York, requiring requests for instructions to be submitted long enough before the charge to allow adequate consideration, when the main charge has clearly stated the law, and no exception

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

has been taken, a judgment will not be disturbed because the court refuses to state some principle of law again in the language of a belated oral request.

**6. Criminal law ☞829(16)—Refusal to charge as to disregarding testimony held justified, where court had charged on credibility of witnesses.**

Where the court had fully charged as to the credibility of the witnesses, it was not error to refuse a requested charge that, if the jury believed any witness had testified falsely to any material fact, they were at liberty to disregard his entire testimony, especially when it was not requested long enough before the charge to allow adequate consideration, as required by a rule of the District Court.

**7. Criminal law ☞829(9)—Refusal to charge as to giving defendant benefit of favorable construction of evidence not error, in view of instructions given.**

On a trial for importing aigrettes, etc., where the court had fully charged as to the presumption of innocence and as to reasonable doubt, and had explained the statutory presumption arising from the possession of the property, the refusal of a requested instruction that, where the evidence was susceptible of two constructions, from one of which the jury might draw an inference of guilt and from the other an inference of innocence, defendant was entitled as a matter of law to the benefit of the inference of innocence, *held* not error, especially as it might be construed as referring to separate pieces of evidence.

In Error to the District Court of the United States for the Southern District of New York.

Harry Friedman was convicted of fraudulent importation of feather goods, and he brings error. Affirmed.

Elijah N. Zoline and Harry Kopp, both of New York City, for plaintiff in error.

William Hayward, U. S. Atty., and Keith Lorenz and Francis A. McGurk, Asst. U. S. Attys., all of New York City.

Before ROGERS, HOUGH, and MAYER, Circuit Judges.

MAYER, Circuit Judge. The indictment charged that on May 27, 1920, Friedman, the defendant, "did fraudulently and knowingly import and bring into the United States" aigrettes, osprey plumes, and the feathers and other parts of birds of paradise; "that is to say the defendant, having arrived at the port of New York * * * from * * * France as a passenger on the steamer La France, on May 27, 1920, did fraudulently and knowingly import," etc.

Testimony was adduced to show that the prohibited goods were found in Friedman's possession, and that he had stated that he had "smuggled" them into this country. There was introduced in evidence a baggage declaration of a passenger, H. Friedman, who arrived in New York on La France on May 27, 1920, and a customs inspector testified that he had witnessed this baggage declaration, and, in effect, had examined defendant's trunk. This trunk had a false bottom, and the inference was that, in this manner, the prohibited merchandise was concealed. Further details of the testimony are unimportant; for the jury had not only some evidence before it, but ample evidence, upon which to arrive at a verdict of guilt.

[1] 1. The first contention of defendant is that, since paragraph 347 of the Tariff Act of October 3, 1913 (Comp. St. § 5291), does not provide a penalty for its violation, the prosecution must fail; while the government insists that, reading section 3082 of the Revised Statutes with paragraph 347, supra, a penalty for the violation of the latter statute is prescribed.

Section 3082 (Comp. St. § 5785) reads as follows:

"If any person shall fraudulently or knowingly import or bring into the United States, or assist in so doing, any merchandise, contrary to law, or shall receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported contrary to law, such merchandise shall be forfeited and the offender shall be fined in any sum not exceeding five thousand dollars nor less than fifty dollars, or be imprisoned for any time not exceeding two years, or both. Whenever, on trial for a violation of this section, the defendant is shown to have or to have had possession of such goods, such possession shall be deemed evidence sufficient to authorize conviction, unless the defendant shall explain the possession to the satisfaction of the jury."

Paragraph 347, supra, reads in part as follows:

"Provided, that the importation of aigrettes, egret plumes or so-called osprey plumes, and the feathers, quills, heads, wings, tails, skins, or parts of skins, of wild birds, either raw or manufactured, and not for scientific or educational purposes, is hereby prohibited; but this provision shall not apply to the feathers or plumes of ostriches, or to the feathers or plumes of domestic fowls of any kind."

The question now presented is disposed of by Feathers of Wild Birds v. United States (C. C. A.) 267 Fed. 964. See, also, United States v. One Bag of Paradise, etc., Feathers, 256 Fed. 301, 167 C. C. A. 473, and Goldman v. United States (C. C. A.) 263 Fed. 340.

[2] 2. Defendant next contends that section 3082, supra, is unconstitutional, in that, as defendant urges, it requires a defendant to testify, or, in the language of the Fifth Amendment, "to be a witness against himself," and, in support of this contention, Boyd v. United States, 116 U. S. 616, 6 Sup. Ct. 524, 29 L. Ed. 746, is cited. The statute discussed in that case, however, does not bear any similarity to the statute here under consideration. Section 3082 merely prescribes a rule of evidence, by providing, in effect, that possession of prohibited goods is presumptive evidence of guilt. Such presumptions are familiar in state and federal statutes, applicable to criminal as well as civil causes, and have long been sanctioned, as is fully pointed out in Mobile, Jackson & Kansas City R. Co. v. Turnipseed, Administrator, 219 U. S. 35, 42, 43, 31 Sup. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463.

The presumption is not conclusive, and hence not open to constitutional objection. There is nothing in the statute which compels a defendant to take the stand, nor testify either for or against himself. The burden imposed on the defendant is merely to rebut the presumption. This he may do by resting on the prosecution's case, or by adducing explanatory testimony on his own behalf. In either event he cannot be convicted, unless the prosecution proves his guilt beyond

a reasonable doubt. A presumption identical with that of section 3082, supra, is found in section 2 of the Act of February 9, 1909 (35 Stat. 614 [Comp. St. § 8801]), commonly called the Opium Act of 1909, which latter statute reads like section 3082, with the exception that, instead of the word "merchandise," in section 3082, the Opium Act used the words "opium or any preparation or derivative thereof." The legal effect of this provision of the Opium Act was recently carefully considered by the Circuit Court of Appeals for the Fifth Circuit in Gee Woe v. U. S., 250 Fed. 428, 162 C. C. A. 498 (certiorari denied 248 U. S. 562, 39 Sup. Ct. 8, 63 L. Ed. 422), and we fully agree with the views expressed in that opinion in respect of the question here involved.

[3] 3. The trial court fully charged the jury on the rule as to reasonable doubt but it is claimed that there was error in the following instruction:

"There is another statute that provides, when one is found with merchandise unlawfully—that is, merchandise in his possession that is prohibited in the United States—the presumption is against him; that he had it in his possession unlawfully, and he is called upon to make some explanation of his possession; otherwise, it is a prima facie evidence of his guilt."

The foregoing was immediately preceded by, "If you have a reasonable doubt that he imported them [the plumes], then you should give him the benefit of the doubt and acquit him," and immediately followed by, "If you have a reasonable doubt of the defendant's guilt, you should give him the benefit of that doubt and acquit him," and then the court defined "a reasonable doubt."

No exception was taken to the instruction now complained of, nor was it suggested that the instruction was ambiguous or not clear. Taken with the context, this instruction cannot be construed as meaning that the defendant, in order to explain possession was called upon to testify nor was there anything in the charge which suggested, in violation of the Act of March 16, 1878 (20 Stat. 30 [Comp. St. § 1465]), that "his failure to make such request (i. e., his request to be a competent witness) created "a presumption against him."

[4] 4. There were no exceptions to the main charge, but, after it had been delivered, there were several requests to charge. One of these was that the court should charge that the jury must find, not only that the goods were unlawfully imported by defendant, but that he had imported them into the United States on May 27 on the steamer La France.

Under well-settled rules in a case of this character, it was unnecessary to set forth in the indictment either the exact date or the steamer on which the merchandise was brought here. What the prosecution was called upon to prove was the material part of the indictment, which was that defendant had knowingly imported this merchandise into the United States at a time not prior to October 3, 1913, the date of the enactment of paragraph 347 of the Tariff Act, supra, and the fact that the indictment particularized as to the date and steamer was immaterial for purposes of proof, because that much of the indictment was su-

perfluous. Evidently that part of the request which related to the steamer escaped the notice of the court, but that fact was not called to the court's attention, and the omission was of no consequence for the reasons just stated. The court, however, correctly charged as to the matter of date, saying:

"If the jury finds from the evidence in this case that this man unlawfully imported into the United States at any time within three years before the return of this indictment, that is sufficient; the date is not material; it is simply alleged in the indictment, to give the defendant an opportunity to know about when the offense occurred."

[5] Two other requests were then made, which, in view of the court's main charge, might have tended only to confuse the jury. Before referring to them, we think it desirable to call attention to rule 7 of the common-law rules of the District Court for the Southern District of New York, which reads as follows:

"In all civil and criminal trials counsel must submit to the judge all requests for instructions long enough before the charge to allow their adequate consideration. The judge may, in his discretion, refuse to consider all requests submitted too late under the foregoing provision."

This rule gives the trial court a proper opportunity to consider carefully the requests made, and its main purpose is to avoid the danger of the court being led into error in the closing moments of the trial. It was intended to preserve the deliberate character of a properly conducted trial, and to prevent error committed because of hastily given instructions first requested of the court after the conclusion of the main charge, and at a time when the jury is impatient for the word which will send it from the jury box to the jury room.

There is, of course, a marked distinction between a situation where an exception is taken, and, in that connection, an oral request to charge is made, in order that the error exposed by the exception may be cured, or that attention may be called to some material omission, and a situation where an oral request to charge is made, so that the court shall give an isolated instruction in respect of subject-matter which it has already adequately and properly dealt with. In the former instance, the request to charge may assist court and jury, and correct or avoid error, while, in the latter, the request may, and often does, tend to create misunderstanding and confusion, and to befog the jury, at the last moment, in regard to rules of law which, otherwise in orderly sequence, have been properly stated to it.

When, therefore, the main charge has correctly stated the law, and no exception has been taken, a judgment on a verdict will not be disturbed, because the court refuses to state again some principle of law in the language of a belated oral request.

[6] In this case, the court was asked to charge that, if the jury believed that any witness "willfully testified falsely to any material fact in this case, they are at liberty to disregard her or his entire testimony." The court had fully charged as to the credibility of witnesses, and when the above referred to request was made, the court said, "I have given the jury the instruction as to their being the judges of the

witnesses and the credibility of their testimony," whereupon counsel said, "And your honor declines to charge as I have requested?" to which the court answered, "Yes; because I have already given it in effect." In this there was no error, because the request was made in violation of rule 7, supra, and, in any event, the court was fully justified in refusing to charge in the language of the request.

[7] The court was also requested to charge:

"I ask your honor to charge the jury that, where evidence is susceptible of two constructions, from one of which you might draw an inference of guilt, and from the other an inference of innocence, the defendant is entitled to the benefit of the inference of innocence."

The court then said:

"Yes. If the evidence warrants it, if it permits of two constructions, then that most favorable to the defendant is usually taken."

Thereupon counsel said:

"I except to that last part of your honor's charge, 'is usually taken,' and I ask you to charge as a matter of law that the jury is bound to give the defendant the benefit in such event."

Thereupon the court said:

"I decline that."

The court had fully charged as to the presumption of innocence, and as to reasonable doubt, and had explained the presumption created by the statute. The court, perhaps, might have elaborated what was meant by the "two constructions," but to do so would merely have been to repeat the main charge; because in order to make the point clear, and avoid confusion in the minds of the jury, just as it was about to retire, it would have been necessary again to explain the presumption of guilt raised by possession of the merchandise, then the presumption of innocence, and so on. Besides, it will be noted that the request was not clear. It was not directed to the construction of all the evidence, and may have been, and probably was, construed by the court as referring to separate pieces of evidence; i. e., the testimony of respective witnesses; and, if so, the request was properly refused, because the jury must arrive at its verdict on all the evidence, giving to each part of the testimony, making up the evidence, such weight, inference, and conclusion as it may determine.

There are not any other assignments of error which we deem necessary to discuss.

Judgment of conviction affirmed.