**UNITED STATES of America,**
**Appellee,**

v.

**Lemuel MONT, Appellant.**

No. 385, Docket 27571.

United States Court of Appeals
Second Circuit.

Argued June 14, 1962.

Decided July 16, 1962.

Jerome J. Londin, New York City, for appellant.

David Klingsberg, New York City (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, Charles B. Rangel, Thomas F. Shea, Arnold N. Enker, Asst. U. S. Attys.), for appellee.

Before FRIENDLY, KAUFMAN and HAYS, Circuit Judges.

FRIENDLY, Circuit Judge.

Mont was tried in the Southern District of New York by Judge Dimock and a jury on a three-count indictment. The first count charged him with receiving, concealing, selling and facilitating the transportation, concealment and sale of some 4.9 grams of heroin imported and brought into the United States contrary to law, in violation of 21 U.S.C.A. §§ 173 and 174. The second count charged him with receiving, concealing, and facilitating the transportation and concealment of 51.4 grams of heroin, in contravention of the same statute. The third count accused him of assaulting, opposing, impeding and interfering with agents of the Federal Bureau of Narcotics engaged in and on account of their official duties, in violation of 18 U.S. C. §§ 111 and 1114.

The jury convicted Mont on the first and third counts and acquitted him on the second; the judge sentenced

him to six years' imprisonment on the first count and to one year's on the third, the sentences to run concurrently. We need not concern ourselves with alleged errors in the trial of the second count, on which Mont was acquitted, unless these affected the fairness of his trial on the first count. Similarly, if the conviction on the first count was proper, any errors in the trial of the third count, on which he was given a shorter concurrent sentence, that did not affect the trial on the first count, are of no moment, Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 2 L.Ed.2d 321 (1958).

■ On the evening of June 21, 1961, acting on the basis of a telephone message from an unnamed caller, whose information was not considered sufficiently substantial to obtain a warrant, Federal Narcotics Agent Bailey and his "partner," Agent Carrozo, went to a building at 411 W. 128th St. to conduct surveillance of Mont, whom, because of the telephone call, they suspected of being engaged in packaging narcotics for sale to addicts. According to their testimony, which, so far as credible, we must here follow, United States v. Brown, 236 F. 2d 403, 405 (2 Cir. 1956); United States v. Burgos, 269 F.2d 763, 765 (2 Cir. 1959), cert. denied, 362 U.S. 942, 80 S. Ct. 808, 4 L.Ed.2d 771 (1960), on entering the lobby they saw Mont "standing just inside the threshold of apartment No. 6." Mont, appearing to have recognized Carrozo, "momentarily froze," and then raised his left hand to his mouth, inserting therein glassine envelopes of the sort commonly used in the narcotics trade. Bailey shouted, "Federal Officers, you are under arrest." Mont allegedly slam-locked the open door of Apartment No. 6, threw the keys into the backyard through an open door, and made a break to follow them. A scuffle ensued. Carrozo grabbed Mont who brought his knee up and kicked Carrozo hard in the groin. Bailey seized Mont and stuck his hand into Mont's mouth to retrieve the contraband, whereupon Mont took the maxillary action not unnatural under the circumstances and lacerated Bailey's thumb.

After some further struggle Carrozo administered a blow to Mont's solar plexus; allegedly as a result of this, the glassine envelopes, numbering 25 and containing some 4.5 grams of heroin, fell from Mont's mouth. Nearly a quarter of an hour in total elapsed before Mont was subdued.

After making a field test of the contents of one of the envelopes, finding that they contained heroin, and regaining the keys, Carrozo opened Apartment No. 6 and searched it. The agents found 135 similar glassine envelopes containing some 22 grams of heroin in the pocket of a jacket, and a package containing 21½ grams in the false bottom of a cigarette box, but no paraphernalia for packaging. They also searched an automobile, belonging to Mont's wife, without result.

■■ After a preliminary hearing, F.R.Crim.Proc. 41, 18 U.S.C.A., Judge Dimock denied a motion to suppress the narcotics, holding that the seizure of the 25 envelopes and the search resulting in the seizure of the heroin in the apartment were incident to a lawful arrest. The agents' observation of Mont's conduct, particularly in the light of the information previously given, met the requirements of 26 U.S.C. § 7607(2) with respect to arrest. Hence the only question as to the seizure of the 25 glassine envelopes relates to their extraction from Mont's person. The Government stresses that the envelopes were not withdrawn from Mont's mouth by Bailey but were exploded by Carrozo's blow to the solar plexus, and points to Espinoza v. United States, 278 F.2d 802 (5 Cir.), cert. denied, 364 U.S. 827, 81 S.Ct. 65, 5 L.Ed. 2d 55 (1960), as sanctioning even more vigorous methods of removal. The distinction between extraction and explosion seems dubious, even if we could believe that Mont possessed such singular oral retaining powers, and appellant contends that Espinoza should not be followed in the light of possibly contrary intimations arising from Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952). However, we are not here required to decide the issue that

appellant tenders. Mont started the fight, altogether unlawfully on the agents' testimony which Judge Dimock was warranted in accepting, and the agents' response must be viewed in that atmosphere and in the context of the necessity to quell resistance to a valid arrest. Judge Dimock's ruling that the search of Mont's apartment was lawful rested on the agents' testimony that Mont was arrested "just inside the threshold," Agnello v. United States, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); United States v. Rabinowitz, 339 U.S. 56, 62–65, 70 S.Ct. 430, 94 L.Ed. 653 (1950); Carlo v. United States, 286 F.2d 841 (2 Cir.), cert. denied, 366 U.S. 944, 81 S.Ct. 1672, 6 L.Ed.2d 855 (1961). Appellant contends this testimony was incredible in the light of evidence that the only lock that was in working order was one which required use of a key. The Government responds that even on that view, a search that would have been lawful, because reasonable, if a defendant were arrested one step inside the threshold, does not become unlawful because he was arrested a step outside it, see Clifton v. United States, 224 F.2d 329 (4 Cir.), cert. denied, 350 U.S. 894, 76 S.Ct. 152, 100 L. Ed. 786 (1955); Kremen v. United States, 353 U.S. 346, 77 S.Ct. 828, 1 L.Ed. 2d 876 (1957). We are not required to decide these questions since the narcotics seized in the apartment were offered only in support of the second count on which the jury acquitted, see Gibson v. United States, 80 U.S.App.D.C. 81, 149 F.2d 381, cert. denied sub nom. O'Kelley v. United States, 326 U.S. 724, 66 S. Ct. 29, 90 L.Ed. 429 (1945); Blassingame v. United States, 254 F.2d 309 (9 Cir. 1958).

The only objection to the admission of evidence that we need to consider relates to testimony of Carrozo, on redirect examination, that he had "received information to the effect that the defendant had picked up or had delivered to him two ounces of heroin and at that moment he [the defendant] was in his apartment putting it in small glassine envelopes in order to distribute to the addict trade." The judge instructed the jury that such hearsay evidence "can be considered by you only on the question whether the narcotics agents reasonably believed that the defendant was committing a crime at the time they arrested him" and not "on the question whether the defendant actually had possession of narcotics." Appellant says the charge did not cure the alleged error, first, because it came too late, an argument which is not here persuasive, see Judge L. Hand in United States v. Smith, 283 F.2d 760, 764 (2 Cir. 1960), cert. denied, 365 U.S. 851, 81 S.Ct. 815, 5 L.Ed.2d 815 (1961); United States v. Crosby, 294 F. 2d 928, 946 (2 Cir. 1961), cert. denied, 368 U.S. 984, 82 S.Ct. 599, 7 L.Ed.2d 523. (1962), and, second, because probable cause for the arrest was not an issue for the jury, Ford v. United States, 273 U. S. 593, 605–606, 47 S.Ct. 531, 71 L.Ed. 793 (1927), which is more so. The Government responds that the testimony was admissible to show that the agents were performing their official duties, an essential element of the crime charged in the third count, so that even if there were an error in the instruction, it was harmless because the evidence was admissible for a broader purpose. Appellant could rejoin that, since no one had disputed that the agents were going about Government business, the judge should nevertheless have excluded hearsay that was so obviously detrimental, see 6 Wigmore, Evidence (3 ed. 1940) § 1864, at 491. Without deciding as to any of these contentions, we uphold receipt of the evidence on the basis of another argument of the Government, namely, that defendant's counsel "opened the door" by questioning Carrozo as to the nature of the information he had received, in a futile effort to lay the basis for a claim of entrapment, even after specific warning from the Court that the consequences would be that "the floodgates are open and the Government can tell all they know about your client," United States v. Angelet, 231 F.2d 190, 192 (2 Cir.), cert. denied, 351 U.S. 952,

76 S.Ct. 849, 100 L.Ed. 1476 (1956). Defendant's general objection to the evidence was thus properly overruled; no request was made that the hearsay be limited to the issue raised on cross-examination, Malatkofski v. United States, 179 F.2d 905, 914 (1 Cir. 1950).

The two remaining questions meriting discussion relate to the charge. The judge read from the familiar clause in 21 U.S.C.A. § 174, "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury," and charged:

> "You see this can answer the question in any case where a defendant is proved beyond a reasonable doubt to have possession of the drug and does not explain that possession to your satisfaction. That is enough to entitle you to conclude that he knows that it [the drug] has been unlawfully imported into the United States and that its possession would be unlawful."

When he asked whether there were any exceptions, defendant's counsel said:

> "The only exception I have is your Honor's failure to charge the intentional violation of the indictment knowingly and wilfully. Outside of that I have nothing."

To this the court responded:

> "I don't like to emphasize one thing as against the rest of the things I said. I think Section 174 is broad enough so that knowing possession would be enough to authorize conviction so that while if you gave that request in advance I would have given it, I don't think I will do it now. You may have your exception."

 It would have been better if the judge had granted the request so as to make it crystal-clear that the jury must be convinced of the defendant's guilty knowledge, although referring again to the so-called presumption if he thought this needed for completeness. The Government always has the burden of establishing that defendant knew that what he was receiving, concealing, etc. was a narcotic drug imported in violation of law; guilty knowledge is clearly an essential element of the offense defined in 21 U.S.C.A. § 174, Harris v. United States, 359 U.S. 19, 23, 79 S.Ct. 560, 3 L.Ed.2d 597 (1959); cf. Morissette v. United States, 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952). However, once the Government has proved possession of what in fact was a narcotic drug, it need do no more to *get* to the jury, which *may* convict unless the defendant explains the possession to its satisfaction. Appellant's claim that § 174 relieves the Government only of proving knowledge of importation contrary to law is without merit. The statute says, more broadly, that "such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury," and the Supreme Court has shown no disposition to construe § 174 to mean less than it says, Roviaro v. United States, 353 U.S. 53, 63 and fn. 14, 77 S. Ct. 623, 1 L.Ed.2d 639 (1957); Harris v. United States, supra; cf. Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632 (1928). Where the charge left something to be desired was that although it correctly said that possession of the drug "is enough to entitle you to conclude that he knows that it has been unlawfully imported into the United States and that its possession would be unlawful," it did not add "a conclusion to which you must come before you can convict," or words to that effect. It would be hypercritical to reverse on such a nicety, when there is nothing to indicate that any defect in the instruction could have been prejudicial. In a recent case where there was an issue of guilty knowledge far more serious than here, the defendant there having testified that she believed the packages of narcotics found on her person actually contained essence of perfume, we approved an in-

struction that "the statute 'casts upon her [the defendant] the burden of rebutting this inference [that she was importing and concealing the heroin in violation of Section 174] by explaining to the satisfaction of the jury that she did not know she was importing a narcotic drug.' " United States v. Christmann, 298 F.2d 651, 653 (2 Cir. 1962).

The second criticism of the charge is that the judge submitted the entire first count of the indictment to the jury, although, it is urged, there was no evidence, other than the hearsay statement of the informer, that would warrant a conclusion that Mont sold or facilitated a sale. The Government answers that under § 174 unexplained possession alone permits an inference of sale or facilitation of sale, even though the logical basis for such an inference is more tenuous than with respect to receipt or concealment, Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L. Ed. 904 (1925), or even purchase, Casey v. United States, supra, at 418, 48 S.Ct. at 374, since in many cases the possession will be for use rather than sale. However, we are not required to rely on this, since if there were any error in submitting the issue of sale to the jury, which we do not decide, it was not prejudicial. It would be impossible for anyone to have concluded, on the evidence here, that Mont had sold or facilitated a sale of heroin but had not received or concealed it. Indeed, the charge made it evident that the prime issue to which the jury should direct its attention was Mont's "receiving" the heroin. True, the judge's statement that "this, of course, would follow irresistibly if you find he had possession of them" was not completely correct—if someone had slipped heroin into Mont's pocket without his knowledge at the time, Mont might be "possessing" it without having "received" it—but since there was nothing to suggest such an extraordinary circumstance, any incompleteness of the instruction created no prejudice on the evidence here. Very likely if the judge had been asked to tell the jury to consider only receiving and concealing, he would have done so. Hence, even if there were error in what he did, which we do not say, the case would not be one for the use of our power under the "plain error" rule, F.R.Crim.Proc. 52(b).

We have reviewed the grand jury minutes of Carrozo's testimony and agree with Judge Dimock in seeing no inconsistency requiring that they be turned over to defense counsel. We have considered all other grounds assigned and find them without merit.[1]

Affirmed.

---

1. Counsel for appellant requested that we reconsider the previous action of another panel (Judge Waterman dissenting), sustained by the Circuit Justice, refusing to interfere with Judge Dimock's denial of bail pending appeal. We agree with counsel that the questions on appeal were not frivolous. However, the denial of bail appears to have rested also on appellant's being a poor bail risk, a consideration even more persuasive now that we have unanimously affirmed his conviction. Hence we decline to grant bail pending application for rehearing or certiorari.