UNITED STATES of America,
Appellee,

v.

Norman GOLDSTEIN, Appellant,

No. 25, Docket 28207.

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1963.

Decided Oct. 22, 1963.

Frances Kahn, New York City, for appellant.

Thomas Day Edwards, New York City (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York; John S. Martin, Jr., Asst. U. S. Atty., of counsel), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

PER CURIAM.

18 U.S.C. § 545 provides, *inter alia,* that

"Whoever fraudulently or knowingly imports or brings into the United States, any merchandise contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law"

shall be guilty of a crime, and that

"Proof of defendant's possession of such goods, unless explained to the satisfaction of the jury, shall be deemed evidence sufficient to authorize conviction for violation of this section."

Pursuant to § 5(b) of the Trading with the Enemy Act, 50 U.S.C.App. § 5(b), any dealings in merchandise originating in China (except Formosa) and in imported hog bristles of whatever origin have been prohibited since December,

1952, except as specially authorized by the Secretary of the Treasury, 17 F.R. 11718, 31 C.F.R. § 500.204; no such licenses have been in effect later than 1953. The instant indictment charged that Goldstein and others violated 18 U.S.C. § 545 by receiving etc. Chinese hog bristles, known to have been illegally imported, on March 26, 1956 and again on April 4, 1956, and that they conspired with others to violate that section, 18 U.S.C. § 371. The jury found Goldstein guilty on all three counts; Judge Palmieri sentenced him to two years on each count, the sentences to be served concurrently.

■ Goldstein's main point is that the provision in 18 U.S.C. § 545 that "Proof of defendant's possession of such goods * * * shall be deemed evidence sufficient to authorize conviction" violates his constitutional rights under the Fifth Amendment because it has the practical effect of forcing him to testify to rebut the permitted inferences. The provision is an old one, going back to 1866, 14 Stat. 179. This Court sustained it against a similar attack in Friedman v. United States, 276 F. 792 (2 Cir. 1921); the Supreme Court later upheld the similar provision in a 1909 statute with respect to opium, the ancestor of the much utilized 21 U.S.C. § 174, in Yee Hem v. United States, 268 U.S. 178, 184–185, 45 S.Ct. 470, 471–472, 69 L.Ed. 904 (1925). The instant case would not permit us to reconsider the constitutional issue as to 18 U.S.C. § 545 even if we wished to do so. After reading the challenged provision to the jury, the judge instructed that "by 'such goods' the law is intended to refer to goods imported contrary to law," with "knowledge of the defendant of such illegal importation." While we would not have interpreted the statute to require proof of such knowledge in order to trigger the evidentiary provision, Judge Palmieri's charge required the Government, in order to avail itself of the provision, to prove every fact necessary in this case to make out the crime. We need not decide whether if Goldstein had taken the stand to rebut the inference of knowledge which his counsel might have expected the judge to allow the jury to draw from possession of goods that were in fact illegally imported, he might still be able to argue that his conviction was obtained through testimony that, on his view of the statute, was unconstitutionally compelled; since he remained silent, it is clear that he lacks standing even on such a basis.

■■ There was ample evidence from which the jury could have concluded that the hog bristles were imported illegally to Goldstein's knowledge; indeed, as the Government argues, this evidence, if believed, would have been "of controlling weight unless explained by the circumstances or accounted for in some way consistent with innocence." Wilson v. United States, 162 U.S. 613, 619, 16 S.Ct. 895, 898, 40 L.Ed. 1090 (1896), quite apart from the statute. Since the sentences on the three counts were concurrent, we are not required to consider the claim that the instruction on the conspiracy count did not adequately apprise the jury, as was held of the charge in United States v. Massiah, 307 F.2d 62, 69–71 (2 Cir. 1962), that knowledge of illegal importation was an essential element of that offense, Lawn v. United States, 355 U.S. 339, 362, 78 S.Ct. 311, 312, 324, 2 L.Ed.2d 321 (1958); United States v. Mont, 306 F.2d 412, 414 (2 Cir. 1961), cert. denied, 371 U.S. 935, 83 S.Ct. 310, 9 L.Ed.2d 272 (1962). However, we find the criticism without basis, as we did in United States v. Agueci, 310 F.2d 817, 824–825 (2 Cir. 1962), cert. denied, Guippone v. United States, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963), and in United States v. Bentvena, 319 F.2d 916, 938–940 (2 Cir. 1963). Appellant's other points do not merit mention.

Affirmed.

LUMBARD, Chief Judge (concurring).

I concur in affirmance of the judgment of the district court. There was ample evidence to support the jury's verdict.

Judge Palmieri's charge effectively read the presumption out of the case. In view of the fact that Goldstein did

not take the witness stand in his own defense, I see no reason to conjure up possible legal arguments dealing with the hypothetical standing which Goldstein might have had to raise the constitutional issue if he had taken the stand.