**UNITED STATES of America,
Appellee,**

**v.**

**William P. GREGORY and Albert Sumpter, Defendants-Appellants.**

**No. 41, Docket 27533.**

United States Court of Appeals
Second Circuit.

Argued Oct. 3, 1962.

Decided Oct. 29, 1962.

La Muriel Morris, New York City, for defendant-appellant William P. Gregory.

Joseph I. Stone and Rudolph L. Zalowitz, Elizabeth, N. J., for defendant-appellant Albert Sumpter.

Robert J. Geniesse, Asst. U. S. Atty., Southern District of New York, New York City (Vincent L. Broderick, U. S. Atty., and Arthur I. Rosett, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD, Chief Judge, and FRIENDLY and KAUFMAN, Circuit Judges.

LUMBARD, Chief Judge.

■ William P. Gregory and Albert Sumpter appeal from their convictions by Judge Cashin, sitting without a jury, in the District Court for the Southern District of New York, for violation of the narcotics laws, 21 U.S.C. §§ 173, 174. Each appellant claims the evidence was insufficient to prove possession and to raise the statutory presumption of knowledge of illegal importation. Finding no merit in these contentions, we affirm.

The government presented evidence that at about 2:30 A.M. on December 5, 1961, Gregory drove himself and Sumpter in Gregory's 1961 Oldsmobile convertible to the Kimberly Hotel on West 74th Street in New York City. Gregory parked the car across the street from the hotel marquee which was lit. While being watched from a distance by several federal narcotics agents, Gregory got out of the car and entered the hotel, leaving Sumpter in the vehicle. Ten minutes later, Gregory came out of the hotel, carrying a brown paper bag. He reentered the car and, at the same time, the agents approached to make the arrest.

One of the agents, Ward, was known to Sumpter,[1] and, when Ward came into view, the window on Sumpter's side of the car opened, an arm, holding the bag, slid "surreptitiously" out of the window, and the bag was dropped in the gutter.

The agents arrested Gregory and Sumpter, tested the contents of the bag disposed of through the window, finding heroin, and searched defendants and the automobile. No other bag was found.

■ There was ample evidence to sustain a finding that Gregory actually possessed the brown bag and carried it from the hotel to the car. Further, since no other bag was found at the scene, it was reasonable to infer that the bag Gregory carried was the same as the one containing heroin which was dropped from the car seconds later. Since the possession proved was reasonably related to the ultimate fact sought to be presumed—transportation of narcotics known to be unlawfully imported, United States v. Santore, 290 F.2d 51, 64, 79 (2 Cir., 1960)—the brevity of the possession is irrelevant. See United States v. Barrington, 291 F.2d 481 (2 Cir., 1961).

■ There was ample evidence that Sumpter held the bag and dropped it out of the car window into the gutter. Sumpter argues, however, that his possession, like that of Narducci in United States v. Santore, supra, did not involve that type of control from which it could reasonably be inferred "that the possessor was going to commit one or more of the specified acts which have been declared criminal." 290 F.2d at 64. We disagree.

We do not understand Judge Kaufman's suggestion that Sumpter might have disposed of the narcotics on Gregory's order without knowing what they were. Since the attempt to dispose of the narcotics was made in full view of agents Bailey and Carrozo, who were approaching the car from the rear, it is most reasonable to suppose that they had not been seen by the defendants and that

1. Sumpter admitted that he knew Ward as he had seen him in 1959 or 1960.

the disposal was prompted by the sight of Ward and the recognition of him as a government agent. The window from which the package was dropped was hidden from Ward, who was approaching from in front of the car on the driver's side. So far as the record indicates, it was Sumpter who recognized Ward. Therefore, it is reasonable to suppose that unless Sumpter already had possession of the narcotics when he saw Ward and, acting independently, disposed of them, he knew what Gregory's package contained, and for that reason communicated the fact of Ward's presence to Gregory. The evidence is thus convincing that the attempt to dispose of the narcotics originated with Sumpter.

Narducci's possession, in the Santore case, supra, never became effective; before he had an opportunity to do anything with the narcotics, he relinquished his grasp, and the narcotics stayed where they were. Sumpter's possession, although also brief, was more complete. As indicated above, it is reasonable to infer from the evidence that he took possession for the purpose of attempting to conceal the narcotics and that he accomplished his purpose, although the attempt failed. The distinction is not, as our dissenting brother argues, merely between "putting back" and "throwing out," but rather between a grasp so fleeting that nothing is or is attempted to be accomplished and a possession which enables the possessor to do, for aught that appears, everything which he intended to do when he took possession. In these circumstances, we think the statutory presumption is applicable.

Affirmed.

KAUFMAN, Circuit Judge (concurring and dissenting).

I agree with my brothers in affirming the conviction of Gregory, but for the reasons I shall set forth I find it necessary to dissent from the affirmance of Sumpter's conviction.

I shall accept the evidence offered by the Government which may be summed up in this fashion. At approximately 2:30 of the morning in question, both defendants were in a car which pulled up opposite the Kimberly Hotel, at which Gregory had been living. Gregory was driving and Sumpter was seated next to him. Gregory entered the hotel and emerged approximately ten minutes later carrying a brown paper bag. Agents Ward and Ripa approached the car from the front. Sumpter knew Ward. He rolled down the right window and surreptitiously lowered a paper bag, apparently handed him by Gregory, and caused it to fall to the ground. It was agreed that Sumpter's participation lasted "only a matter of seconds."

Sumpter's case presents a difficult problem for me. Since there was no independent proof of his knowledge of the contents of the paper bag or of any conscious implication in a narcotics conspiracy, the problem we have to decide is whether the statutory presumption of 21 U.S.C. § 174 [1] may be invoked merely upon proof of the momentary grasp of the bag and its lowering out of the car window. I do not challenge Judge Cashin's finding that such did in fact occur; my difficulty is with the legal conclusions he drew therefrom. Judge Cashin believed that Sumpter had possession of the narcotics long enough to invoke the statutory presumption.

That notorious irritant Mr. Narducci of United States v. Santore, 290 F.2d 51 (2d Cir., 1960), cert. denied 365 U.S. 834, 81 S.Ct. 745, 5 L.Ed.2d 743 (1961), seems naturally to provide the focus of our analysis. This Court, speaking of defendant Narducci, stated:

"In order to make the statutory presumption contained in that section meet the test of validity we

1. "Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury."

must define 'possession' as used therein so as to include only that type of control from which it could not unreasonably be inferred that the possessor was going to commit one or more of the specified acts which have been declared criminal." (290 F.2d p. 64)

The statutory presumption is merely a rule of evidence which shifts the burden to the defendant of explaining his possession of the narcotics. It is usually reasonable to assume that one having possession of narcotics—in the sense of ability to control—knows that he has narcotics and knows that they were procured illegally. Since it is *reasonable* to deduce the presumed fact from the proven fact of ability to control, the shift of the burden to the defendant is appropriate. It is reinforced by the policy reason that it is easier for the defendant to prove what was going on in his mind, by way of excuse, than it is for the Government to prove that the defendant indeed did have knowledge of illegal importation. Where the possession is so fleeting and where the ability to control is so tenuous that it is unreasonable to deduce knowledge therefrom, then the shifting of the burden of proof to the defendant is improper. In Yee Hem v. United States, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904 (1925), the Supreme Court held that a statutory presumption is valid only where there is a rational and not unreasonable connection between the ultimate fact to be presumed and the fact proved.

The majority has summarily distinguished the Narducci episode, but I am convinced that the case before us is an even stronger one for reversal of the conviction than was Narducci's, and the attempted distinction does not stand up. Narducci opened a car trunk and was allegedly in the process of removing a package of narcotics when, manifestly in fear of federal narcotic agents nearby, he returned it to the trunk after having it in his possession for "less than half a minute." His furtive actions revealed a sense of guilt and of knowledge of the contents of the package. By replacing it in the car trunk, he concealed or secreted the package just about as securely as anyone can. Sumpter, in our case, might well have been told on the spot by Gregory to dispose of the bag, although Sumpter had no knowledge of its contents. He was sitting in someone else's car, which, unlike the Narducci situation, is hardly probative of his knowledge of the contents of the package. He tried to dispose of the bag, but did a pretty poor job of "concealing" or "secreting" it, since he dropped it right outside the car in view of the agents. It is true that there was evidence that he knew agent Ward and that his conduct might thus have reflected a sense of guilt and knowledge of the contents of the bag. But this alone, especially in view of Narducci's case, should be inadequate evidence upon which to found a conviction.

If *"ability* to control" is the crucial factor, Narducci had a greater ability to control the narcotics than did Sumpter— federal agents were not closing in, he could have thrown the narcotics on the ground, hidden them carefully in the trunk, put them in his pocket and driven away, etc. Sumpter had few of these choices—his receipt of the package from Gregory was much more reflexive, the disposal might have been done pursuant to Gregory's order, and it did not result in anywhere near as effective a "concealment" as in the case of Narducci.

It has been urged, in an attempt to distinguish the circumstances relating to Narducci, that Narducci performed the negative act of returning the package of narcotics to its original hiding place whereas here, Sumpter committed a more "positive, affirmative" act when he lowered the brown paper bag out of the car window. I must admit that I am at somewhat of a loss to see the relevance to "ability to control" of the physical dichotomy of "putting back" and "throwing out." What would the result have been in Narducci's case had he put the narcotics in a different section of the

automobile trunk? Or left the narcotics on the rear bumper? Or under the car, or in its back seat? Was his ability to control any the less merely because he chose to return the package to the trunk where he found it?

The majority opinion cites United States v. Barrington, 291 F.2d 481 (2d Cir., 1960). There, the defendant took two packages out of a locker in an airlines terminal, and took only four steps before he was intercepted by narcotics agents. Despite his short period of possession, the statutory presumption was held properly invoked. But, would Barrington's ability to control the narcotics have been absent if he took one or two steps away from the locker in which the narcotics were hidden and then turned around and replaced the package in his locker? I cannot comprehend how the precise physical placement of the narcotics bears upon the ability to control. If, indeed, it has no bearing, then I believe that it is unreasonable to presume that the fleeting possession of the paper bag in the case before us, for but a few seconds, without any evidence that Sumpter knew what was in it, or that he knew that Gregory was engaged in a transaction involving narcotics, warrants an inference of facts requisite to conviction —knowledge of the illegal contents of the package and of their illegal importation, and specific intent to violate the statute.

It is a source of concern to me that my brothers are willing to distinguish so summarily the precedent offered us by the Narducci episode, which this Court sitting *in banc*—my brothers among that number—so clearly thought warranted reversal of the conviction. The *in banc* Court in Santore was overwhelmingly influenced by the fact that Narducci's grasp was but "momentary." Surely Sumpter's grasp of "only a matter of seconds" ranks as "momentary", if Narducci's grasp of roughly half a minute does. My brothers' use of such phrases as "effective" possession and "complete" possession, in an effort to distinguish Narducci, somewhat mystifies me. Our only concern is whether the application of the statutory presumption is a reasonable one, and to hold that it is here would, in the words of my brother Friendly, "give the act of touching an unwarranted talismanic effect." United States v. Santore, supra, at 82 of 290 F. 2d.[2] It is likewise a source of concern to me that the Government is content to rest its case upon such flimsy evidence, especially when the consequence can only be the imposition of a severe minimum sentence of five years' imprisonment. There is no doubt in my mind that such penalties are necessary to stamp out the invidious traffic in narcotics; but they should also serve as a reminder that the Government's zeal should not overcome good sense. "Our concern for efficiency must not outweigh our concern for individual rights * * *. Once we embark upon shortcuts by creating a category of the 'obviously guilty' whose rights are denied, we run the risk that the circle

2. I am also troubled by the extraordinary manner in which my brothers have read the trial transcript and drawn their inferences therefrom. From the fact that Sumpter knew agent Ward, my brothers conclude that it was Sumpter who warned Gregory and suggested that he hand over the bag so that he, Sumpter, could dispose of it; from this, they are drawn to the conclusion that Sumpter must have known that narcotics were in the bag. There is not a single iota of evidence in the record that Sumpter communicated the fact of Ward's presence to Gregory. If there is any inference which the record supports it is not that "the attempt to dispose of the narcotics originated with Sumpter," but that it must have originated with Gregory. The evidence disclosed that it was Gregory who, in the middle of the night, was carrying narcotics across a quiet street; four unknown individuals (the agents) approached the car under such circumstances as most likely to have been observed by Gregory, who was no doubt wary of any strangers in the vicinity. It is therefore almost incredible to assert that it was Sumpter who initiated the disposal operation, a point not even raised by the Government.

of the unprotected will grow." United States v. Tribote, 297 F.2d 598, 603–4 (2d Cir., 1961).

I would reverse Sumpter's conviction and dismiss the indictment.