THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* WALDEMAR PELLOT PÉREZ, Defendant and Appellant.

No. CR-65-94.      Decided November 18, 1965.

*Víctor Tirado Saltares* and *Elizabeth Armstrong de Watlington* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Américo Serra, Assistant Solicitor General,* for The People.

MR. JUSTICE RIGAU delivered the opinion of the Court.

This is a case of possession and sale of narcotics. Appellant was charged with a violation of § 29 of the Narcotics Act of Puerto Rico, 24 L.P.R.A. § 974z. Later we shall examine that section. The information contained three counts, to wit: (1) possess, (2) sell, and (3) conceal and transport the narcotic drug known as heroin. The trial having been held, appellant was acquitted of the second and third counts and convicted on the first.

On appeal he assigns two errors. In the first he contends that the court erred in concluding that defendant had in his possession and control said drug, within the meaning of § 29 *supra*; and in the second he challenges the sufficiency of the evidence. In his brief appellant discusses jointly both errors. We shall do likewise.

Actually the two assignments of error present only one problem: to determine whether appellant actually violated § 29 *supra* of the Narcotics Act. Let us examine first the said legal provision as it governs in Puerto Rico and then we shall make a brief analysis of the evidence.

Section 29 *supra* in the pertinent part, that is, as respects heroin (since it also covers opium, marihuana and products thereof), reads as follows:

"There is hereby absolutely forbidden the holding, possession, conveyance, use, application, prescription, manufacture, preparation, or any transfer or receipt, as well as the introduction, concealing, and transportation in Puerto Rico of: . . . the narcotic drug known as heroin, as well as any manufactured preparation or product thereof of whatever form and nature, containing any quantity of this drug."

The prosecution evidence consisted—in addition to a deck of heroin which was offered in evidence—of the testimony of chemist Fabián Álvarez Nazario and of internal-revenue agent Gerardo Mendoza Pérez. We are only interested in the latter's testimony for the purpose of elucidating the question at issue.

That agent testified that on the day of the events, May 10, 1963, he was working as an undercover agent; that in Hato Rey he came across defendant-appellant, who asked him if he was going "to cop stuff," to which he answered that he was; that defendant told him that the man was Chiqui Kercadó, and that he took him to see him; that the latter refused to sell to him because he did not know him; that Chiqui Kercadó told him to give $4 to defendant, and that he did so; that Chiqui Kercadó gave defendant one deck of heroin for the $4, and the latter in turn delivered it to him (to the agent).

The evidence which we have summarized, and which was believed by the trial court, showed that at a certain stage of the transaction the heroin was in appellant's hands; that

is, it was in his possession for some time, though presumably briefly. Does this fact constitute a punishable act under our statute?

Appellant's position is that he was not in possession of the drug because "in order to be in possession of something, one must be capable of executing some act of dominion over this."

■ ■ Apparently appellant believes that the possession punishable by the Narcotics Act is what the Civil Code calls "civil possession," and which consists in the holding of a thing by a person, joined to the intent of holding it as one's own. Civil Code, § 360; 31 L.P.R.A. § 1421. That is not the case. The Narcotics Act prohibits the mere possession or holding of the prohibited drugs, that is, what the Code calls "natural possession." This is so because the purpose of the Narcotics Act is not to regulate the property and the different ways of possessing a thing. The purpose of the Narcotics Act is to protect public health, morals and safety, and its enactment responds to the State's duty to protect those values and to promote the general welfare. *Jenkins* v. *State*, 137 A.2d 115 (1957). In order to accomplish those purposes, the Act prohibits the possession and sale of narcotics, with the exceptions provided by law. *State* v. *Lee*, 382 P.2d 491 (1963).

■ Our § 29 makes no distinction, and the interim or temporary possession prohibited thereunder for the purposes of an illegal conveyance constitutes illegal possession. In the context of the Act, and with its purpose in mind, the words possession, transportation and control of the prohibited drug should be understood in their common meaning. *State* v. *Richard*, 158 So.2d 828 (1963). Appellant's position attributing to the word possession used in the Narcotics Act the aforementioned technical concept of civil possession is not correct.

In order to dispel any doubt, let us delve into this question since there is federal legislation and case law interpretative thereof which may give the impression that it is contrary to our decision here. However, it is not so. Let us explain ourselves.

Prior to the operation of the Narcotics Act which governs in Puerto Rico, No. 48 of June 18, 1959, 24 L.P.R.A. § 973 *et seq.*, the field of narcotic drugs was regulated by Act No. 12 of April 19, 1932 (33 L.P.R.A. §§ 1393–95, 1956 ed.), and by Act No. 61 of May 13, 1934 (24 L.P.R.A. § 951 *et seq.*, 1955 ed.). Both were repealed by the present Act. Laws of 1959, p. 119. Act No. 12 of 1932 prohibited the manufacture, transportation, possession, use, purchase, etc., of marihuana. Act No. 61 of 1934 prohibited the manufacture, possession, sale, etc., of "any narcotic drug," except as authorized by the Act. 24 L.P.R.A. § 962, 1955 ed. Act No. 61 of 1934 had been patterned after the Uniform Narcotic Drugs Act, 9B Uniform Laws Anno. 279 (1957), which was adopted in 1932 by the National Conference of Commissioners on Uniform State Legislation.

Act No. 48 of June 18, 1959, which repealed the aforementioned legislation, provided in general in its § 3 that:

"No person shall manufacture, possess, control, sell, prescribe, furnish, apply, or in any manner use, receive or transfer narcotic drugs or compounds thereof, except as hereinafter provided in this chapter." 24 L.P.R.A. § 974, 1964 ed.

■ In specifying the acts prohibited in connection with the drugs known as opium, marihuana and heroin, Act No. 48 *supra*, as we already saw, prohibits "the holding, possession, conveyance, use, application, prescription, manufacture, preparation, or any transfer or receipt, as well as the introduction, concealing, and transportation in Puerto Rico" of the aforementioned narcotic drugs. 24 L.P.R.A. § 974z. It should be borne in mind that our Act (No. 48 *supra* of 1959) was enacted precisely "to enlarge the field of regu-

lation with more detailed and severe provisions," and "to cover new needs and problems" because the federal narcotic laws "are not designed to stamp out the illegal drug trafficking without the aid of state laws to supplement them." See the Supplemental Report on H.B. 231, X Journal of Proceedings 1937 (1958). It is clear that in the light of the legislative intent and of the clear and explicit wording of the Act, we must conclude that the holding or possession of the drug—provided it is illegal—constitutes an offense, even though such possession be brief, and there should be no question that it so constitutes in a case such as this in which one comes into such temporary possession deliberately and as a step of an illegal transaction.

The summary which we have made of the legislative development in the field of narcotic drugs in Puerto Rico might perhaps be sufficient to dispose of the case at bar, were it not for the existence of jurisprudential pronouncements in the federal sphere which, as we already said, apparently propose a solution contrary to that assumed in this opinion. We shall therefore turn to analyze the state of the federal case law.

Two laws which, pursuing different objectives, regulate the field of narcotics, govern in the federal sphere. One is known as the Harrison Act, which forms part of the Internal Revenue Code. 26 U.S.C.A. § 4701 *et seq.* That statute is of a fiscal nature.[1] The provision which bears more relation to the problem under consideration is § 4704 (a) of Title 26, which we copy below.[2] The other—the Act of February 9,

---

[1] Annotation, *"Harrison Narcotic Act,"* 13 A.L.R. 858; 39 A.L.R. 236 (Supp.); Hughes, *"United States Narcotics Laws,"* Crim. L. Rev. 520 (1964).

[2] "It shall be unlawful for any person to *purchase, sell, dispense,* or *distribute* narcotic drugs except in the original stamped package or from the original stamped package; and the absence of appropriate taxpaid stamps from narcotic drugs shall be prima facie evidence of a violation of the subsection by the person *in whose possession* the same may be found." (Italics ours.)

1909, as amended, 21 U.S.C. § 171 *et seq.*—is framed within the health legislation, and its main purpose consists in prohibiting the importation of narcotic drugs into the United States. *Palmero* v. *United States*, 112 F.2d 922 (1940). We copy below the pertinent section and italicize its last paragraph.[3]

■ The first point which we must emphasize in connection with these two statutes is that neither one, unlike ours, punishes the mere possession as such. *United States* v. *Santore*, 290 F.2d 51 (1960); *Pierriero* v. *United States*, 271 Fed. 912 (1921); *Senick* v. *United States*, 271 Fed. 918 (1921); *Erwing* v. *United States*, 323 F.2d 674 (1963). This is a factor which distinguishes fundamentally the federal legislation from ours and which, therefore, makes it necessary and unavoidable that our case law on this matter be different from the federal.

The second point which we must clarify is that the fact of the possession, under the said federal laws, has an exclusively evidentiary function. That is, when the lawmaker provided that the possession would constitute prima facie evidence of the violation of the punishable offenses and that

---

[3] "Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years and, in addition, may be fined not more than $20,000. For a second or subsequent offense (as determined under section 7237(c) of the Internal Revenue Code of 1954), the offender shall be imprisoned not less than ten or more than forty years and, in addition, may be fined not more than $20,000.

"*Whenever on trial for a violation of this section the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.*" 21 U.S.C. § 174. (Italics ours.)

it would be considered sufficient evidence to sustain a conviction, what was done was to shift to defendant the burden of proof so that he could explain to satisfaction why narcotics were seized in his possession. They therefore operate as presumptions which the accused is bound to overcome. The federal case law is abundant in this respect. It is sufficient to cite the following cases: *Brightman* v. *United States*, 7 F.2d 532 (1925); *Lott* v. *United States*, 218 F.2d 675 (1955); *McDade* v. *United States*, 206 F.2d 494 (1953); *Aeby* v. *United States*, 206 F.2d 296 (1953); *Goode* v. *United States*, 149 F.2d 377 (1945); *United States* v. *Hernández*, 290 F.2d 86 (1961); *Velázquez* v. *United States*, 244 F.2d 416 (1957); *United States* v. *Santore, supra*; *Rodella* v. *United States*, 296 F.2d 306 (1960); *Brumbelow* v. *United States*, 323 F.2d 703 (1963). This evidentiary function of the fact of the possession in these statutes is what has prompted the courts, as we shall forthwith see, to resort to fictions and to distinctions, at times subtle, in order to determine whether or not the presumptions established operate in particular cases.

In *Yee Hem* v. *United States*, 268 U.S. 178 (1925), the Federal Supreme Court, construing an opium provision which contained a similar presumption, upheld its validity, warning that in order that a statutory presumption may be constitutionally valid—in the light of the due process clause and of the privilege against incrimination—there must be rational connection between the fact proved and the fact presumed.[4] As a result of this warning the federal case law has had to resort to rather subtle distinctions as to what constitutes "possession," since otherwise the statutory presumption would be questionable in its application to the con-

---

[4] *Cf.* *Tot* v. *United States*, 319 U.S. 463 (1943), where this doctrine is also analyzed in the light of the Federal Firearms Act. See Note, *"Constitutionality of Rebuttable Statutory Presumptions,"* 55 Colum. L. Rev. 527 (1955).

crete facts. See *United States* v. *Santore, supra*; *United States* v. *Gregory*, 309 F.2d 536 (1962).

Another reason why the federal courts have resorted to fictions regarding the term possession lies in their purpose to impart to the statute the greater effectiveness possible, not to take it away. Thus, "constructive possession," or presumptive possession in the sense of dominion or control, have been used, rejecting, however, the idea of "imputed possession." See *Hernández* v. *United States*, 300 F.2d 114 (1962); *United States* v. *Jones*, 308 F.2d 26 (1962); *United States* v. *Countryman*, 311 F.2d 189 (1962); *Arellanes* v. *United States*, 302 F.2d 603 (1962); *Brothers* v. *United States*, 328 F.2d 151 (1964); *White* v. *United States*, 294 F.2d 952 (1961); Note, *"Narcotics-Inference in Federal Statute Implying Guilt from Fact of Unexplained Possession Can Be Applied to an Aider and Abettor of Sale Without Showing of Possession,"* 110 U. Pa. L. Rev. 903 (1962).

As may be seen from the foregoing, it would be error to construe our statute in consonance with the federal case law. It would be so in view of the difference of objectives between the legislation of both jurisdictions, and also because of the fact of the exclusively procedural function which characterizes the term possession in the federal laws. In order to have a clear picture of the difficulty mentioned, let us examine two cases.

In *United States* v. *Santore*, 290 F.2d 51 (1960), one Narducci was charged jointly with others with a violation of § 174 of Title 21 U.S.C. Narducci's sole participation in the facts object of the information consisted in that he was caught while attempting to open a package which he had removed from the trunk of an automobile. It seems that upon being caught he was led by fear to get rid of the package immediately without accomplishing his objective, but the fact is that the package was in his possession for a very brief

moment. In reversing his conviction, Judge Waterman stated as follows:

"The Government argues that Narducci's momentary grasp of the package constituted 'possession' of it by him, and that at that moment the crimes with which he and Tarlentino were charged were completed. We cannot agree. A statutory presumption is valid only where there is a rational and not unreasonable connection between the ultimate fact to be presumed and the fact proved. *Yee Hem* v. *United States*, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904, supra. *The crime punishable under section 174 is not the possession of narcotics*, but rather the transporting, concealing, receiving, buying or selling of narcotics; and, consequently, in order to make the statutory presumption contained in that section meet the test of validity we must define 'possession' as used therein so as to include only that type of control from which it could not unreasonably be inferred that the possessor was going to commit one or more of the specified acts which have been declared criminal. Narducci's grasp of the package was clearly not such possession, for he voluntarily released it one brief moment later." 290 F.2d 64–65. (Italics ours.)[5]

As may be seen from the words copied above, the reasoning for acquitting Narducci cannot operate under our Narcotics Act as being incompatible therewith. Our Act makes the unpermitted possession an offense.

The other case to which we wish to invite attention is *United States* v. *Gregory*, 309 F.2d 536 (1962). In this case two persons, named Gregory and Sumpter, drove in an automobile to a hotel. Gregory, the operator, parked the car across the street and entered the hotel. Shortly afterwards Gregory came out carrying a paper bag and reentered the car. The narcotic agents were observing the transaction, and when they proceeded to make the arrest Sumpter slid the bag out of the car. After the court stated, citing *Santore, supra*, that the proved possession was reasonably related to

---

[5] Although this case was subsequently reconsidered by the court in banc, the observations on *Narducci* were sustained. See p. 74.

the fact sought to be presumed—the transportation of narcotics—and that for that reason the brevity of possession was irrelevant, it proceeded, at p. 538, to confront Sumpter's contention that the case came within the doctrine of *Santore* in these terms:

"Narducci's possession, in the Santore case, supra, never became effective; before he had an opportunity to do anything with the narcotics, he relinquished his grasp, and the narcotics stayed where they were. Sumpter's possession, although also brief, was more complete . . . . The distinction is not . . . merely between 'putting back' and 'throwing out,' but rather between a grasp so fleeting that nothing is or is attempted to be accomplished and a possession which enables the possessor to do . . . everything which he intended to do when he took possession. In these circumstances, we think the statutory presumption is applicable."

It should be recalled that in the case at bar appellant's possession of the drug, though brief, was such as to permit him to accomplish his purpose: to pay it to the purchaser.

Would it be possible in our law—which punishes the mere holding and does not operate in terms of presumption —to draw such a subtle distinction as that between *Santore* and *Gregory*? Obviously not, since the justification to sustain it which may be found in the federal law finds no support in our statute.

Regarding the Uniform Narcotic Drugs Act, it is well to point out that the construction placed thereon is similar, as a whole, to that placed on the federal laws. See Annotation, *"Constitutionality, construction and application of Uniform Narcotic Drug Act,"* 119 A.L.R. 1399; Annotation, *"What constitutes 'possession' of a narcotic drug prescribed by section 2 of the Uniform Narcotic Drug Act,"* 91 A.L.R.2d 810; Annotation, *"Harrison Narcotic Act,"* 13 A.L.R. 858, 39 A.L.R. 236 (Supp.). However, in *Sutton* v. *State*, 343 S.W.2d 452 (1961), the Criminal Court of Appeals of Texas in whose jurisdiction governs the Uniform

Act held, in a situation essentially the same as that in the case at bar, that the offense of possessing narcotics had been committed. Let us examine the facts of the case not without first recalling that our Act, as we have seen, is by far broader and more explicit than the Uniform Act.

In *Sutton* v. *State, supra,* an undercover agent went to Mrs. Sutton's apartment asking her to pick up some heroin for him. She answered that she could, but would have to first make a telephone call, which she did from a public telephone outside the apartment. The agent walked down with her to the telephone. After completing the call, she informed the agent that everything was okay and that the heroin would be brought in a few minutes. The agent returned to the apartment and she stayed outside. Shortly afterwards she came up to the apartment and asked the agent for $21 and he left. He returned to the apartment, this time accompanied by a woman who before leaving gave the agent a piece of paper. Sutton then gave the undercover agent a package containing three capsules of heroin.

In view of a contention that the evidence was insufficient to establish the possession, since it merely showed that the heroin was in her hands for about 25 seconds, the court held that the length of time the heroin was under her control would not determine the question of her illegal possession thereof.

In construing our statute as we do here, we have merely given effect to the legislative mandate in an area where, as it is known by all, momentous social problems are at stake. See *People* v. *López Rivera,* 91 P.R.R. 672 (1965); *Jenkins* v. *State,* 137 A.2d 115 (1957). However, since in every juridical problem the gamut of possibilities is broad because it is impossible to foresee all situations, it is well to point out that the possession or holding of narcotics does not constitute an offense on all possible occasions. Apart from the fact that the Narcotics Act itself establishes exceptions to

the effect, 24 L.P.R.A. § 974(a), mention should be made of the doctrine on incidental possession or carrying which we have developed on the pertinent provisions of our weapons laws in order to impart justice in each case. *Cf. People v. Rivera*, 83 P.R.R. 452 (1961); *People v. Arana*, 72 P.R.R. 768 (1951); *People v. Gil de Lamadrid*, 70 P.R.R. 875 (1950); *People v. Fernández*, 65 P.R.R. 466 (1945); *People v. Suazo*, 65 P.R.R. 27 (1945); *People v. Robert*, 60 P.R.R. 815 (1942); *People v. Pérez*, 40 P.R.R. 724 (1930); *People v. Moll*, 28 P.R.R. 733 (1920).

■ The errors assigned were not committed. The trial court could have found appellant guilty also on the count of sale since, according to the evidence, he was a direct participant in an illegal sale of narcotics and his situation was that of a principal or author in the offense committed. Penal Code, § 36; 33 L.P.R.A. § 82.

The judgment appealed from will be affirmed.

The Chief Justice did not participate. Mr. Justice Pérez Pimentel, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra dissent in a separate opinion rendered by the latter.

—O—

MR. JUSTICE SANTANA BECERRA, with whom MR. JUSTICE PÉREZ PIMENTEL and MR. JUSTICE HERNÁNDEZ MATOS concur, dissenting.

San Juan, Puerto Rico, November 18, 1965

Appellant was charged with a violation of § 29 of the Narcotics Act of Puerto Rico, No. 48 of 1959. The information charged him: (1) that on May 10, 1963, *"he had in his possession and control the narcotic drug known as heroin"*; (2) that he sold the narcotic drug known as heroin; and (3) that he concealed and transported the narcotic drug known as heroin.

The evidence in the record to support the information is the following: appellant came across an undercover agent whom he knew as being a drug addict, and asked the latter if he was going "to cop" heroin, that is, to score stuff, to which the agent answered that he was going to score a bag, meaning that he was going to buy a deck of heroin. Appellant told him that the man was Chiqui Kercadó. The agent knew Kercadó and went with appellant to see him, and asked Kercadó if he had stuff. Chiqui answered that he did, but that he did not know him. He then told him to deliver $4 to Waldemar, appellant herein. That occurred in an alley of the ward of Jurutungo in Hato Rey.

"DISTRICT ATTORNEY:

Q. What did you do?

A. I delivered to Waldemar the $4 which I have mentioned.

Q. Who was the first to speak there about $4?

A. Chiqui.

Q. Why did he mention those $4?

A. That was the cost of the deck.

WITNESS:

I delivered the $4 to Waldemar; in my presence Chiqui delivered a deck supposedly of heroin to Waldemar and Waldemar gave it to me. [Rec. 13–14.]

DEFENSE:

Q. Witness, the truth then was that you carried out the transaction, was Chiqui the one who had the heroin?

A. Chiqui.

Q. Pardon me, the one who had that small envelope which he gave you was Chiqui?

A. Yes, sir.

Q. And what did they tell you? What did Chiqui say, that he did not trust you?

A. That he did not know me.

Q. That was why the transaction was made that way, because he said that he did not know you?

A. That he did not know me.

.     .     .     .     .     .     .     .

Q. Then the deck of that small envelope, Chiqui delivered it to Waldemar?

A. To Waldemar.

Q. And Waldemar in turn to you?

A. To me.

Q. And that was at what time, witness?

A. That was at 12:30 p.m." (Rec. 16–17.)

Section 29 of the Narcotics Act prohibits, among other things, the holding, possession, conveyance, etc., of a narcotic drug. Section 3 provides that no person shall manufacture, *possess, control,* sell, etc., narcotic drugs.

We do not maintain that the term possession in this statute is the most severe of the civil possession. It may be a holding. According to the ruling and statements in the opinion of the Court, the statute has used the term in its common and ordinary meaning, but even in such common and ordinary meaning the possession has, at least, a certain minimum attribute which is entirely lacking in the record of this case.

Appellant was charged in the information that *"he had in his possession and control* the narcotic drug known as heroin." The most general and less strict definition of the term possession is "to have a thing *in one's possession."*[1] Appellant was therefore charged that *he had in his possession* the drug at the time of the occurrence of the facts. The operation carried out with unity of act motivated by a circumstance which arose there, belies, in my opinion, the imputation, taking it in the minimum sense which may mean something. There is no other evidence nor other collateral evidence than the act itself. The accusation is not one of conspiracy, nor is there evidence indicative of an interested joint possession. Nothing in the record shows that appellant

---

[1] Casares, *Diccionario Ideológico,* 1963. Cabanellas, *Diccionario de Derecho Usual,* 1954. Vox, 1953. *La Real Academia* and Webster, 1961, are more strict.

had a personal interest in the sale. The seller and the agent used their hands as an incidental vehicle of the mutual promises in what was one single act of sale. This explains why the trial court, as a court of law, acquitted him of the charges of sale and transportation. For the same reasons it seems specious to us that it should convict him, within this transaction, of "having in his possession" the drug.[2]

In *State* v. *Reed*, 170 A.2d 419 (N.J.), a leading case, it is said that the term possession, as used in criminal statutes, ordinarily signifies *intentional control* of a designated thing accompanied by knowledge of its character. See the annotation following this case in 91 A.L.R.2d 810, where the illustrative cases on the term possession in narcotics are analyzed.[3]

The cases are agreed that the term possession in this statute contains some quantum of control by the defendant. In view of the disclosures of the record, I cannot agree that it was proved, with legally sufficient evidence, that appellant had in his possession and control the drug known as heroin, and I therefore dissent from the opinion of this Court.

---

[2] Perhaps the record would present more collateral elements for a sale —appellant as coauthor—in the light of the definition of *sale* (offer of the drug) of § 2 of the statute.

[3] The facts in *United States* v. *Gregory*, 309 F.2d 536 (2d Cir.), *cert. denied*, 376 U.S. 973, apart from the fact that the possession was merely evidentiary matter to presume the commission of another offense, are different in my opinion. See *Hernández* v. *United States*, 300 F.2d 114, 117 *et seq.* (9th Cir.). The situation in *Sutton* v. *State*, 343 S.W.2d 452 (Texas), is also somewhat different as a whole. Apart from the short time that defendant had the drug in her hands—the time is not the controlling factor—there are other elements of judgment in the evidence. See, on reconsideration, the emphasis placed on the fact that defendant had sold heroin to the agent on other occasions. The facts in *Fuller* v. *State*, 380 S.W.2d 619 (Texas), and *Huerta* v. *State*, 390 S.W.2d 770 (Texas), which follow *Sutton*, are likewise different. See, in general, 33 Words and Phrases, Cum. Ann. Pocket Part—"Possession, Narcotic."